**James Earl WILLIAMS, Appellant,**

**v.**

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Nov. 23, 1976.

Denied by Supreme Court
March 14, 1977.

Walker Gwinn, Memphis, for appellant.

R. A. Ashley, Jr., Atty. Gen., William B. Hubbard, Asst. Atty. Gen., Nashville, Arthur T. Bennett, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

TATUM, Judge.

Appellant was convicted in Shelby County for the offenses of armed robbery and rape. He was sentenced to serve 35 years in the State Penitentiary in the rape case and 25 years in the robbery case. The two sentences were ordered to run concurrently.

■ We must affirm the first assignment of error. The Honorable Otis Higgs, Jr., Judge of Division IV of the Criminal Court of Shelby County, presided at appellant's trial. Appellant was convicted on June 30, 1975, and he filed his motion for a new trial on July 23, 1975. The motion for a new trial was overruled by Judge Higgs on January 16, 1976. Judge Higgs resigned from office effective September 1, 1975. Judge Higgs' resignation had been in effect more than 60 days when he overruled appellant's motion for a new trial, therefore he had no judicial power to act on the motion. T.C.A. § 17–116 provides as follows:

"17–116. *Powers after vacation of office.* —Whenever any trial judge shall vacate his office for any cause whatsoever other than the death or permanent insanity of such judge, he shall have and retain, as to cases pending before him, the trial of which has begun prior to his vacation of office, all the powers in connection with said cases which he might have exercised therein, had such vacation of office not occurred, provided that his powers in this respect shall not extend beyond sixty (60) days from said date of such vacation of office. Provided, however, that as respects any judge who retired on or after February 11, 1970, and prior to April 25, 1973 such powers shall extend until June 30, 1973. Such powers shall especially include, but shall not be limited to, the right to render judgments, to hear and determine motions for new trial, to grant appeals and to approve bills of exceptions. Such powers may be exercised by such judge either within or without the geographical limits theretofore assigned by law to such judge."

■ Under the above-quoted Statute and long-established practice in Tennessee, when an unsuccessful litigant seasonably files a motion for a new trial, the adverse jury verdict and judgment thereon is held in abeyance until the Judge who presided over the trial has approved the verdict of the jury by overruling the motion for a new trial and until his action is spread upon the minutes of the Court and signed by the Trial Judge. T.C.A. § 17–116 preserves the judicial powers of a Judge after vacating office for reasons other than death or permanent insanity. This extension of power is applicable only to cases tried before that Judge while in office and the power is preserved only for 60 days after the Judge vacates office. The State in its brief concedes that we must reverse this conviction. *See also, McClain v. State,* 186 Tenn. 401, 210 S.W.2d 680 (1948); *Howard v. State,* 217 Tenn. 556, 399 S.W.2d 738 (1966); *Jackson v. Handle,* 46 Tenn.App. 234, 327 S.W.2d 55 (1959). This Court has also followed this rule in other recent unreported cases.

Appellant urges that the Trial Judge erred in allowing Brenda Driskel to testify concerning another assault and robbery by appellant. It is necessary for us to discuss the testimony of the victim and Brenda Driskel before disposing of this assignment.

The victim testified that at about 6:30 P.M., on January 3, 1975, she was walking near the intersection of Vollentine and Decatur Streets in Memphis when she heard the footsteps of someone walking at a fast pace behind her. That person grabbed her from behind with one hand and with the other he held a knife to her face where it could be seen by her and he then held it to her throat. He threatened to kill her if she screamed.

This individual demanded money from the victim and he also demanded to know her age. She told him that she was 23

years of age. He got $18.00 from her. He then forced her into an alley where he raped her. The victim made a positive identification of the appellant as being the robber and rapist.

Brenda Driskel testified that on February 20, 1975, at about 7:35 P.M., she was walking from a grocery store on North Bellevue in Memphis at a point some 10 to 15 blocks from Vollentine and Decatur Streets or "within walking distance" from the scene of the above described crime. She heard someone walking at a fast pace behind her and a man grabbed her from behind around the neck with one hand and with the other hand he held the knife to her face. He asked her for her money and she gave him all that she had which was $1.00. She started "hollering and crying" and he threatened to kill her if she continued. He continued to walk her toward "a dark path, alley or something" and he likewise inquired of her as to her age. She was actually 19 years of age but she told him that she was only 16. When appellant learned her age, he released her but threatened to kill her if she looked at him.

After holding the knife to her face in her view, he lowered it and held it to her throat. She positively identified appellant as being the person who assaulted and robbed her and he was arrested shortly thereafter.

Appellant did not testify in his own behalf but introduced witnesses seeking to establish an alibi. There were no witnesses to the episode in the case *sub judice* other than the victim. The identification of the appellant was the principal issue in the trial of the case.

We have reviewed many cases discussing the question of the admissibility of evidence of other crimes than that for which the accused is on trial. The general rule is stated in *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523, 529 (1963):

"The general principle to be collected from these, and other authorities, is that evidence of another crime or crimes than that charged in the indictment and for which defendant is on trial, is not admissible unless such evidence is relevant to prove his guilt of that crime. *The test of relevancy is furnished not by law, but by logic and general experience* (Thayer, Preliminary Treatise on Evidence (1898), 264–266). Morgan, Basic Problems of Evidence (1961), 183–194; Trautman, Logical or Legal Relevancy—A Conflict in Theory, 5 Vand.L.Rev. 385, 403–410. It is generally agreed that evidence of other crimes by defendant is, not admissible merely to prove his disposition to commit such a crime as that on trial; but such evidence is admissible when it is relevant to prove some other material issue on trial; for instance, when it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of defendant on trial. Morgan, supra; *Harris v. State,* supra [189 Tenn. 635, 227 S.W.2d 8]; *Woodruff v. State,* supra [164 Tenn. 530, 51 S.W.2d 843].

The question of the admissibility of evidence of other crimes to prove defendant's guilt of the crime on trial underwent elaborate consideration in *Mays v. State,* supra [145 Tenn. 118, 238 S.W. 1096]. There, the Court said:

'Evidence which is relevant to defendant's guilt is not inadmissible because it proves or tends to prove him guilty of another and distinct crime. It frequently happens that two distinct offenses are so inseparably connected that the proof of one necessarily involves proving the other, and in such a case on a prosecution for one evidence proving it cannot be excluded because it also proves the other. Evidence of another and distinct crime is admissible if it was committed as a part of the same transaction and forms part of the *res gestae*.

\*    \*    \*    \*    \*    \*

'It is also admissible, where the crime charge[d] is a part of a plan or system of criminal action, to offer evidence of

other crimes near to it in time and of similar character, to show the knowledge and intent of the accused, and that the crime with which he is charged was not the result of accident or inadvertence.'" [Emphasis supplied]

In *Harris v. State,* 189 Tenn. 635, 227 S.W.2d 8, 11 (1950), the Supreme Court observed:

"It may be, however, that a particular strategem or method has such unusual particularities that reasonable men can consider that it would not likely be employed by different persons. *Wrather v. State,* supra [179 Tenn. 666, 169 S.W.2d 854]. Many men commit murder, but Jack the Ripper used his knife in a manner so peculiar that when his crimes were viewed together there could be little doubt that they were committed by the same man. Merely the fact, however, that a series of such crimes may be committed with a knife will not render them unusual enough to identify the perpetrator of one as the perpetrator of the others. Sometimes to establish the identity of a sexual pervert, evidence of an unusual perversion has been received, but this is no more than the application of a corollary of the rule above stated, that a defendant's methods in the commission of a crime may be sufficiently unusual to amount to a signature. *Barnett v. State,* 104 Ohio St. 298, 135 N.E. 647, 27 A.L.R. 351.

This court has said that where the sole question is the identity of the accused, the State may properly be permitted to cover a wide range in seeking proof of other crimes which cannot be reasonably believed to have been committed except by the same criminal who committed the offense under investigation, and thereby establish the identity of the person responsible. *Warren v. State,* supra [178 Tenn. 157, 156 S.W.2d 416]."

In *Caruthers v. State,* 219 Tenn. 21, 406 S.W.2d 159, 161–162 (1966), the Supreme Court held:

"As stated before, the defendant attempted to raise the defense of alibi. In raising this defense, the defendant naturally questions the identification by Mr. Coffelt of the defendant as the man who robbed him. Thus, the question of identity constitutes the crucial point in this case, and the testimony of Mrs. Head was introduced to support Mr. Coffelt's identification of the defendant as the man who committed the offense involved in this case. It therefore is apparent that the testimony of Mrs. Head was properly admitted by the trial court if there was 'clear and convincing' evidence that the defendant was the person who committed the prior crime. The following quotation from *Wrather v. State,* supra, sets out the test to be applied to determine admissibility, as follows:

'(4) Without going so far as to hold, with some of the Courts, that the proof of the independent crime must be 'beyond a reasonable doubt,' we approve the rule that, to render evidence of an independent crime admissible, the proof of its commission, and of the connection of the accused on trial therewith, must be not 'vague and uncertain,' but clear and convincing. Obviously, an absolute essential is that (1) a former crime has been committed, and (2) committed by the identical person on trial. Only thus can identification, or other proof of guilt, of the accused in the pending case be aided by evidence of the independent crime. And this limitation upon admissibility applies equally to all the exceptions to the general rule excluding evidence of other crimes, whether introduced to prove identity, or for any other purpose.'"

In a further discussion of this rule in *Warren v. State,* 178 Tenn. 157, 156 S.W.2d 416 (1941), the Supreme Court held that before the rule could be applied, two conditions must be met: (1) the proof must show similarity in the circumstances of the commission of the two offenses so as to afford evidence of the identity of the offender, and (2) there must be a genuine issue as to the identity of the accused. Such evidence should be admitted with cau-

tion and should never be admitted unless there are peculiar circumstances and details common to both offenses and the identity of the accused has been otherwise clearly made out. Evidence of other offenses should never be admitted under any theory when it serves only to show that the accused has committed other crimes.

For other discussions of the rule permitting evidence of other crimes to prove identification see, *Wrather v. State,* 179 Tenn. 666, 169 S.W.2d 854 (1943); *Snowball v. State,* 477 S.W.2d 240 (Tenn.Cr.App.1971); *Pruitt v. State,* 3 Tenn.Cr.App. 256, 460 S.W.2d 385 (1970).

We think that the testimony of Brenda Driskel meets all of the tests for admissibility. Both offenses took place in the same general neighborhood and the time element was not remote. Both victims were walking down a street and were overtaken by a person walking at a fast pace from the rear. He grabbed each of them from the rear and brandished a knife first in their face and then at their neck. He used the knife in the same manner in both offenses. He took money from both of them before attempting any rape. He inquired of them both as to their age. He asked both where they lived. He threatened to kill both if they cried out. He did not want either to look at him. The testimony of one victim could be substituted for the testimony of the other up until the time inquiry was made as to age. The numerous similarities of detail in these two episodes meets the "signature" requirement. The *modus operandi* was the same in both instances. Evidence that appellant committed the robbery and assault on Ms. Driskel is "clear and convincing". We hold that the testimony of Brenda Driskel was admissible and Assignment III is overruled.

Appellant next complains that the evidence preponderates against the verdict of the jury and in favor of his innocence. We have reviewed the evidence and we do not find that it preponderates against appellant's guilt and in favor of his innocence and this assignment is overruled. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973); *McBee*

*v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963); *Greer v. State,* 539 S.W.2d 855 (Tenn.Cr.App.1976).

Under Assignment I, we reverse and remand for a new trial.

WALKER, P. J., and DWYER, J., concur.