Larry YOUNG, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

March 16, 1978.

Certiorari Denied by Supreme Court June 19, 1978.

Edward G. Thompson, Public Defender, A. Kemp Stallings, Jerry A. Schatz, Asst. Public Defenders, Memphis, for appellant.

Brooks McLemore, Jr., Atty. Gen., Robert A. Grunow, Asst. Atty. Gen., Robert Boak Slocum, Research Asst., Nashville, Joseph

B. Dailey, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

TATUM, Judge.

The appellant, Larry Young, was convicted of armed robbery and sentenced to serve ten years in the State Penitentiary. He assigns error that the Trial Judge erred in admitting certain evidence, in instructing the jury, and in refusing to strike his aliases from the indictment. He also questions the sufficiency of the evidence. The judgment of conviction must be reversed.

The conviction was based on an armed robbery of Stella Brown after her apartment was burglarized. The first assignment of error complains of the Trial Judge admitting evidence of a burglary committed at the residence of Mr. and Mrs. Paul V. Brown, less than one block from the Stella Brown residence. We will describe both crimes.

At about 5:00 or 5:30 A.M. on 16 January 1977, Ms. Stella Brown was awakened by an intruder who held a kitchen knife at her throat. He demanded money and led her by the hand while she searched for it. She found $7 which she gave to the intruder. She then complied with his demand that she remove her clothing and get back in bed, but while he continued to search for money, she made an escape by running out the door. The intruder cut her as she was leaving. She ran to a neighbor's house and the police were called.

The intruder was dressed in an army fatigue jacket and wore a black "sweater-like cap." He had a "thin veil" or loose stocking covering his face, but Stella Brown could see his facial features. The victim gave a description of the appellant to police immediately after the intrusion. She positively identified the appellant at the trial and his photographs previous to trial. The intruder gained entrance through the kitchen window.

At about 5:00 on the morning of 7 January 1977, Paul V. Brown was awakened by his wife, who was in the bed with him. Upon being awakened, Mr. Brown saw a man in the house he later identified as the appellant. This man was not armed with a knife or other weapon. Mr. Brown immediately got out of bed and pursued this individual for some distance down Hollywood Street, until he became too fatigued to run further. During the pursuit, Mr. Brown could well see the felon's face as he was in close pursuit and the felon continued to look back. At the end of the chase, Mr. Brown and the intruder both stopped and stood looking at each other for a time.

The burglar gained entrance to Mr. Brown's house by removing the glass in the back door, reaching through, and unlatching the door. This burglar was wearing a green army jacket and a black knit cap, but no veil or covering on his face. The appellant was positively identified as the burglar. Mrs. Brown's purse was missing.

Evidence of the Paul V. Brown burglary could be accepted, if at all, to identify the appellant as the person who burglarized Stella Brown's residence and committed the armed robbery. There is no room for a question of intent, guilty knowledge, or accident. Evidence that the appellant committed the Paul V. Brown burglary is not admissible for the purpose of proving his propensity to commit the crime for which he was on trial (the Stella Brown robbery).

In *Wrather v. State,* 179 Tenn. 666, 169 S.W.2d 854 (1943), it was held that sometimes to establish identity, it becomes relevant to show similarity and uniqueness of the plan or method by which more than one crime has been accomplished. In such a case, the proof depended on to show that the two crimes were committed by the same person must establish some peculiarity of plan or a unique method common to the two offenses, otherwise, evidence showing the defendant guilty of the collateral crime could do no more than indicate an evil propensity. The Supreme Court and this Court have discussed the rule in the *Wrather* case many times. *Caruthers v. State,* 219 Tenn. 21, 406 S.W.2d 159 (1966); *Harris v. State,* 189 Tenn. 635, 227 S.W.2d 8 (1950); *Warren v. State,* 178 Tenn. 137, 156 S.W.2d 416

(1941); *Williams v. State,* 550 S.W.2d 246 (Tenn.Crim.App.1977); *Snowball v. State,* 477 S.W.2d 240 (Tenn.Crim.App.1971); *Pruitt v. State,* 3 Tenn.Crim.App. 256, 460 S.W.2d 385 (1970).

We do not find that the methods employed in the Stella Brown and Paul V. Brown burglaries bear the similarities or unique methods necessary to establish that the same person committed both offenses. We concede that there was substantial evidence that the appellant committed both crimes and that he was wearing the same cap and jacket when committing them. We also concede that the two crimes were within nine days of each other and in the same neighborhood. These common characteristics are insufficient. The test is not whether there was evidence that a defendant committed both crimes, but whether there was a unique method used in committing the crimes. It is not enough that the appellant was wearing the same clothing during the commission of the two crimes, unless in some way, his clothing was a part of the *modus operandi.*

There was little or no uniqueness of method in these two crimes. There was no similarity in the manner in which the two residences were entered and there was no similarity of conduct by the perpetrator inside the two residences. In one residence, the intruder wore a thin veil or loose stocking over his face, but in the other, he did not. He was armed with a knife in Stella Brown's residence, but in the Paul V. Brown residence, he was unarmed. The two break-ins were not "strikingly similar" as insisted by the State. There was nothing unique and common about the method of commission of the two crimes to evidence that they were committed by the same person; the *modus operandi* of one crime was not the same as that of the other. As stated, the identification alone of the defendant as the perpetrator of the collateral crime is not evidence which would identify him as the perpetrator of the crime for which he is on trial. Assignment One is sustained.

In his second assignment of error, the appellant says that the victim's identification of appellant was tainted by suggestion so as to render her identification of him inadmissible in evidence. After the crime was committed, the victim was shown several photographs of young black men from which she identified the appellant as the person who robbed her. The appellant's photograph shows short hairs growing from his chin and none of the persons in the other photographs had chin hairs. The photograph was taken on 15 December 1971, but the victim noticed no beard or chin hairs when the crime was committed. Obviously, the victim was not basing her identification on the chin hairs. We have reviewed the photographs shown to the victim and we find that the appellant's photograph was not unduly suggestive or prominent. The fact that the victim mistakenly "thought" that a man whose face she glimpsed was the appellant, does not render her identification inadmissible. This goes only to the weight that the jury might give to her identification evidence. *Shye v. State,* 506 S.W.2d 169 (Tenn.Crim.App. 1974). Assignment Two is overruled.

In Assignment Three, the appellant complained of the warrantless search of him at the time of his arrest. At about 2:15 A.M. on 14 February 1977, police officers observed the appellant walking down a street. He was wearing a green army fatigue jacket and a black cap and fit the overall description of the robber. The officers drove their patrol car alongside the appellant and the appellant began backing away with his hands in his pockets. The officers got out of the patrol car and requested the appellant to remove his hands from his pockets, but he refused to do so and continued backing. They approached him and removed his hands from his pockets and "frisked him for a weapon." They found two chisels, a steak knife, a pocket knife, and nine hypodermic needles. We think that the officers had a lawful right to search the appellant. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, the fruits of the search are not shown to be connected, relevant, or materi-

al in the case *sub judice* and for that reason, the evidence should not have been admitted. *Jones v. State*, 523 S.W.2d 942 (Tenn.Crim.App.1975). This assignment is sustained.

In his fifth assignment of error, the appellant complains of the Trial Judge instructing the jury that if they found evidence of flight beyond a reasonable doubt, they could consider this fact along with all other facts and circumstances in determining appellant's guilt. Apparently, this instruction was based on the flight made from the Paul V. Brown home when Brown gave chase. We have held that evidence of the Paul V. Brown burglary is not admissible; so, of course, this instruction will not be given on retrial.

The appellant next complains of the use of the aliases "Alfred Davis," "Alford Davis," and "Ben Johnson" on his indictment. He told the arresting police officers that he was "Alfred Davis," so he has no legitimate complaint to the inclusion of this alias on the indictment. *United States*

*v. Solowitz*, 99 F.2d 714 (7th Cir. 1938). There is no evidence to show a purpose for the other aliases and they should be stricken. *Mallicoat v. State*, 539 S.W.2d 54 (Tenn.Crim.App.1976); *United States v. Wilkerson*, 456 F.2d 57 (6th Cir. 1972).

Finally, the appellant says that there is insufficient evidence to support the verdict. We have carefully reviewed the record and disagree. This assignment is overruled.

For the reasons stated, the judgment of the Criminal Court is reversed and the case is remanded for a new trial.

DUNCAN, J., and SAM LEWIS, Special Judge, concur.