# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### OCTOBER 1997 SESSION



FILED

January 13, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 02C01-9610-CR-00369 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. ARTHUR T. BENNETT, |
| DONALD P. SPICER, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Rape of a child; assault) |

FOR THE APPELLANT:           FOR THE APPELLEE:

MARVIN E. BALLIN and
MARK A. MESLER (on appeal only)
200 Jefferson Ave., Suite 1250
Memphis, TN   38103

JOHN KNOX WALKUP
Attorney General & Reporter

KENNETH W. RUCKER
Asst. Attorney General
450 James Robertson Pkwy.
Nashville, TN  37243-0493

WILLIAM L. GIBBONS
District Attorney General

JENNIFER S. NICHOLS
Asst. District Attorney General
201 Poplar Ave.
Criminal Justice Center --Third Fl.
Memphis,  TN   38103

OPINION FILED:_____

**AFFIRMED IN PART;
REVERSED AND DISMISSED IN PART**

**JOHN H. PEAY,**
Judge

# O P I N I O N

The defendant was indicted separately for rape of a child and aggravated sexual battery.  The offenses were consolidated for a jury trial at which the defendant was convicted of rape of a child and misdemeanor assault.  After a hearing, the lower court sentenced him to eleven months, twenty-nine days on the assault conviction, and to eighteen years incarceration on the rape conviction; he was also fined two thousand five hundred dollars ($2500) on each offense.  The sentences were ordered to run concurrently.  In this appeal as of right, the defendant raises five issues:

1.  Whether the evidence is sufficient to support his convictions;

2.  Whether the trial court erred in ordering that the offenses be consolidated for trial;

3.  Whether the trial court erred in failing to force the State to respond further to his motion for a bill of particulars;

4.  Whether the trial court erred in finding one of the child victims competent to testify; and

5.  Whether the indictments are fatally defective for failure to allege a necessary element of the offenses.

Upon our review of the record, we reverse and dismiss the defendant's conviction for assault.  The judgment below is otherwise affirmed.


## FACTS

On March 3, 1994, Debra Catherine Stone and her ten-year-old daughter LAS[1] went to the store.  While there, LAS told her mother that they needed to talk.  After they returned to the car, according to Stone, LAS told her that, "My dad has been messing with me."  By "dad," LAS was referring to her step-father, the defendant.[2]  Stone

---

[1] It is the policy of this Court to identify minor victims of sex crimes by their initials.

[2] Stone and the defendant have since been divorced.

2

subsequently called her other daughter, twelve-year-old ANS, and asked her if the defendant "had tried to do anything to her." According to Stone, ANS had responded, "Yes, ma'am."

Stone then drove to Terry Jarvis' house. Jarvis was a special deputy and the defendant's employer. Jarvis told Stone to call "the county" and Stone subsequently called the sheriff's department. By the time she got home to pick up her other daughter, officers had arrived and taken the defendant into custody.

Both daughters testified at trial. LAS testified that the defendant "would come into my bedroom at night while my mom, and me, and my sister were asleep and he would take his private and put his private into mine." She further testified that it had "hurt" and she had told the defendant to stop but he didn't. She testified that it had happened more than one time, with the most recent occurrence on the Tuesday or Wednesday of the week in which she told her mother.

ANS testified that the defendant had repeatedly touched her "private areas," indicating those to be her chest and genital regions. She testified that the first time had been shortly after a move. The defendant had entered her bedroom at about eleven or twelve at night, she testified, and bumped into some moving boxes, waking her. She testified, "And then he came over there and was trying to feel on me." The defendant did not try to rape her, however.

Susan Yvette Neal, a registered nurse who examined both girls on March 7, 1994, testified that the only abnormal finding she had made with respect to ANS was a vaginal discharge. With respect to LAS, however, she made two abnormal findings:

lack of a hymen and "an enlarged introitus." She testified that both of these findings on LAS were "consistent with penetration." She further testified that, "[w]ith this kind of an enlargement, without recent trauma, then this is something that has happened more than once."

The defendant did not testify. However, he called Jarvis who testified that, while Stone and LAS had been at his house, LAS was "petting the cat and walking around there like nothing going on. . . . She wasn't upset or nothing, playing with the cat. I mean, you wouldn't have knowed anything was wrong." Jarvis' son, Scott Jarvis, testified that he and his father had gone over to Stone's house that evening to pick up a vehicle, at Stone's request. While they had been there, Scott testified, he heard Stone ask ANS whether the defendant had ever touched her, and that ANS had said, "No, mama, no."

**ANALYSIS**

The defendant initially contends that the evidence is insufficient to support his convictions. We agree with respect to the simple assault and we therefore reverse that conviction and dismiss the charge. However, the evidence was sufficient to support the rape conviction and it is therefore affirmed.

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well

4

as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Under Tennessee law, an assault may be committed in one of three ways: the defendant "(1) Intentionally, knowingly or recklessly causes bodily injury to another; (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." T.C.A. § 39-13-101(a) (1991). In this case, the trial court charged the jury[3] with only the second type of assault: that the defendant intentionally or knowingly caused ANS to reasonably fear imminent bodily injury. However, ANS did not testify that the defendant's actions had caused her to fear such injury. The child did testify that she had gotten up from her bed as the defendant was "trying to feel on [her]" and that she then went through several doorways trying to avoid him, eventually going into her mother's bedroom, but these actions are as easily explained by disgust, revulsion and/or anger as they are by fear of imminent bodily injury.

Indeed, the State does not even attempt to argue in its brief that the proof

---

[3]The transcript of the trial does not include the trial court's verbatim charge to the jury. However, a copy of the court's written charge is contained in the record.

5

supports this form of assault. Rather, it argues that "this type of contact between a step-father and his step-daughter certainly is offensive or provocative to a reasonable person." While we certainly agree with this assertion, the jury was not given the opportunity to convict the defendant of that crime. The proof being insufficient to support the crime of which the jury did convict the defendant, we have no choice but to reverse the assault conviction and dismiss that charge.

With respect to LAS, the jury convicted the defendant of rape of a child. That offense is defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." T.C.A. § 39-13-522(a). The victim testified that the defendant "would come into my bedroom at night while my mom, and me, and my sister were asleep and he would take his private and put his private into mine." When asked if she was talking about the defendant's penis when she said "his private," she responded yes. When asked if she was talking about her vagina when she said "my private," she said yes. She also testified as to the positions that the defendant's body and hers had been in while the attacks were occurring. She further testified that "it hurt." The most recent attack, she testified, had occurred earlier in the week in which she told her mother what had been happening.[4]

The nurse who examined LAS testified that she "did not have a hymen" and that she "had an enlarged introitus." Either of these conditions, she testified, was "consistent with penetration." Thus, the State adduced medical proof which corroborated the victim's testimony. In total, the evidence was more than sufficient for the jury to convict the defendant of rape of a child. This issue is without merit.

---

[4]It was this most recent attack which the State elected to submit to the jury pursuant to our doctrine requiring election of offenses. See, e.g., Burlison v. State, 501 S.W.2d 801 (Tenn. 1973).

The defendant next contends that the trial court erred when it granted the State's motion to consolidate the indictments for a single trial. In so ruling, the trial court stated:

> such cases, for judicial economy, should be tried together, using the same witnesses for the same set of circumstances, just a different victim, same household, . . . and [the State says] on one occasion the children were together when he was in there.
>
> So I feel that under those circumstances that we should join these indictments and not try them separately . . . .

We respectfully disagree with the trial court's ruling in this regard.

Two or more indictments may be consolidated for trial "if the offenses . . . could have been joined in a single indictment . . . pursuant to Rule 8 [of the Tennessee Rules of Criminal Procedure]." T. R. Crim. P. 13(a). Offenses may be joined in a single indictment under Rule 8 "if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character." T. R. Crim. P. 8(b). Once two or more offenses have been consolidated pursuant to Rule 8(b), however, "the defendant shall have a right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." T. R. Crim. P. 14(b)(1).

With respect to whether these offenses were part of a common scheme or plan, we first note a previous holding by this Court that

> in order to be ⟨parts of a common scheme or plan' as contemplated by Rules 8(b) and 14(b)(1), two or more sets of offenses must be so similar in <u>modus</u> <u>operandi</u> and occur within such a relatively close proximity of time and location to each other that there can be little doubt that the offenses were committed by the same person(s). The mere fact that a defendant has committed a series of . . . rapes, or a series of other crimes does not mean that they are part of a common scheme or plan although the offenses may be of the

7

‹same or similar character.'

State v. Peacock, 638 S.W.2d 837, 840 (Tenn. Crim. App. 1982). We have since clarified this holding by determining that, "A common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes." State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995). In the evidentiary context, proof of a common scheme or plan falls into three categories: (1) distinctive design ("signature") crimes; (2) a larger, continuing plan or conspiracy; and (3) the same transaction. Id.

In order to fit into the first category, there must have been a "unique method" used in committing the offenses. Hoyt, 928 S.W.2d at 943, quoting Young v. State, 566 S.W.2d 895, 898 (Tenn. Crim. App. 1978). We do not think such a method was established here. We acknowledge that both victims testified that the defendant had accosted them while they were at home and asleep in their bedrooms. However, the eldest victim testified that the defendant had also tried to fondle her before she went to bed while her mother and sister had gone to the store on the evening of March 4, 1994. Moreover, the types of assault committed on each victim were significantly different: while the youngest child testified that the defendant had repeatedly had sexual intercourse with her, the elder child testified that the defendant had not tried to rape her. The medical proof was consistent with this testimony. Therefore, we do not find the modus operandi to be "so unique and distinctive as to be like a signature." Hoyt, 928 S.W.2d at 943.

The second category of continuing plan or conspiracy requires proof of "a working plan, operating towards the future with such force as to make probable the crime for which the defendant is on trial." Id. There is no proof of such a plan here. Nor do these crimes fit within the same transaction category, which includes offenses committed

8

within a single criminal episode. Id.

Because we find that the defendant's crimes against LAS and ANS do not constitute a "common scheme or plan," we hold that the court below erred in granting the State's motion to consolidate.[5] However, we further find this error to have been harmless. At the close of proof, the State elected two very distinct offenses to submit to the jury: for ANS, the jury was instructed to consider her testimony "concerning the alleged Aggravated Sexual Battery occurring in her bedroom in her bed of her home at 7037 Tulip Trail, Memphis, Tennessee during the period of time between July 1, 1993 and December 31, 1993; wherein the defendant allegedly entered the victim's bedroom knocking the door against some moving boxes full of trophies." In contrast, the jury was instructed to "consider the testimony of [LAS] concerning the alleged Rape of a Child occurring in bed in a bedroom of her home of 7036 Tulip Trail, Memphis, Tennessee on approximately the Tuesday night March 1, 1994 prior to March 4, 1994 when she disclosed the incident to her mother." The court also instructed the jury that, "Although there are two indictments in this charge, please remember that they are separate and distinct cases and you, the jury, should treat them as such at all times." The jury was additionally instructed:

> You may convict the defendant on both indictments, or acquit him on both indictments; or convict on one and acquit on the other. If you find from the evidence, beyond a reasonable doubt, the defendant guilty of each indictment, you should convict on each. If you find from the evidence, beyond a reasonable doubt, one indictment guilty [sic], and have a reasonable doubt as to the guilt of the other indictment, you should convict on the one you are satisfied beyond a reasonable doubt as to the guilt of, and acquit on the other. If you have a reasonable doubt as to the guilt on both, you should acquit on both.

Of course, a jury is presumed to follow its instructions. See, e.g., State v. Vanzant, 659

_____

[5]In light of our holding that these offenses did not belong to a common scheme, it is irrelevant whether the evidence of one offense would be admissible at the trial of the other.

9

S.W.2d 816, 819 (Tenn. Crim. App. 1983).

While the defendant was found guilty as charged in the rape of a child offense, the jury found him guilty of only a misdemeanor assault with respect to the other charge. As set forth above, we have reversed the assault conviction due to insufficient evidence. However, the disparity in the verdicts indicates that the jury considered the charges and the evidence separately and did not convict the defendant of one offense based on the evidence of the other offense. It is the defendant's responsibility to show that he was clearly prejudiced by the trial court's refusal to sever offenses. State v. Hodgkinson, 778 S.W.2d 54, 61 (Tenn. Crim. App. 1989). In this case, he has failed to do so. Accordingly, we hold that the defendant was not prejudiced by the lower court's error and a new trial is not required. This issue is without merit.

In his third issue, the defendant argues that "[t]he [trial] court refused to even grant his motion" for a bill of particulars. The defendant mischaracterizes what actually occurred. On the morning of trial, defense counsel told the court that he had filed a motion for a bill of particulars "early on" and that the State had "answered, said I wasn't entitled to one." The court pointed out to defense counsel that if there had been a dispute over the motion, it should have been set for a hearing: "But that was not done." Instead, defense counsel apparently waited until trial to argue that the State's response to his motion was inadequate.

Our Rules of Criminal Procedure provide that a pretrial motion such as one for a bill of particulars "shall be determined before trial unless the court, for good cause, orders that it be deferred" and that, "Failure by a party to raise . . . objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof."

10

T. R. Crim. P. 12(e) & (f). This Court has repeatedly held that "before trial" means sometime earlier than the day of trial. See, e.g., State v. Aucoin, 756 S.W.2d 705, 709 (Tenn. Crim. App. 1988). Thus, the defendant's failure to timely pursue his motion for a bill of particulars renders this issue waived. Furthermore, as pointed out by the State, the defendant's motion for new trial does not raise this issue, thereby constituting a separate ground for waiver. See T.R.A.P. 3(e).

The defendant next contends that the trial court erred in ruling LAS competent to testify. He bases his argument primarily on the witness's admission during voir dire by defense counsel that she did not know what an oath was. The defendant relies on Tennessee Rule of Evidence 603 which provides that, "[b]efore testifying, every witness shall be required to declare that the witness will testify truthfully by oath or affirmation, administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the duty to do so." However, the general rule of competency is that "[e]very person is presumed competent to be a witness except as otherwise provided." T. R. Evid. 601. Our Supreme Court has ruled that, "[s]o long as a witness is of sufficient capacity to understand the obligation of an oath or affirmation, and some rule or statute does not provide otherwise, the witness is competent." State v. Caughron, 855 S.W.2d 526, 538 (Tenn. 1993). The determination of a witness's competency is left to the trial court's discretion. Id.

In this case, the prosecuting attorney first questioned LAS outside the presence of the jury and LAS demonstrated her understanding of the difference between the truth and a lie. The court then continued the voir dire examination, asking LAS, "Now, you remember a few moments ago when you came in and I raised my hand and you raised your hand and you swore to tell the truth, the whole truth, and nothing but the truth,

11

so help you God?" LAS answered, "Yes, sir." When the court then asked her what that meant, she responded, "It means to tell the truth and not to tell a lie." The court continued: "Now, you understand, then, the nature of the oath, that that's what that is -- you're required to do when you swear to tell the truth?" LAS again responded, "Yes, sir." The court asked a few questions later, "And what are you going to do while you're on the stand?" LAS answered, "I'm going to tell the truth." The court asked, "Are you going to tell part of the truth or all of the truth?" and she answered, "All of the truth."

We think the trial court properly determined LAS competent to testify. The defendant argues that our Supreme Court's decision in State v. Ballard, 855 S.W.2d 557 (Tenn. 1993), requires us to find the trial court in error. We disagree. Ballard instructs us that, "When examining a child's competency to testify a judge should determine whether the child understands the nature and meaning of an oath, has the intelligence to understand the subject matter of the testimony, and is capable of relating the facts accurately." Id. at 560. The case does not require that the child understand the definition of an oath. See also State v. Fears, 659 S.W.2d 370, 375 (Tenn. Crim. App. 1983) (So long as a witness is "sensitive to the obligation to tell the truth under oath . . . there is no requirement that [she] have sufficient academic learning to define an oath or articulate its obligations.")

Under Ballard, a trial court must determine the competency of a victim of a child sex abuse crime in order to permit the child to testify "if it can be determined that the child understands the necessity of telling the truth while on the witness stand." 855 S.W.2d at 560. The voir dire examinations of LAS established that she did understand that she had to tell the truth while testifying, and that she understood the difference between the truth and a lie. Her inability to define the term "oath" did not require the trial

12

court to find her incompetent. The trial court did not abuse its discretion in allowing her testimony, and this issue is therefore without merit.

In his final issue, the defendant attacks the sufficiency of his indictments, alleging that each fails to allege an essential element of the offense and that his convictions are therefore void. The defendant relies on this Court's opinion in State v. Roger Dale Hill, Sr., No. 01C01-9508-CC-00267, Wayne County (Tenn. Crim. App. filed June 20, 1996, at Nashville). However, our Supreme Court has overruled the Hill decision, holding that unlawful sexual penetration of a person less than thirteen years old "is committable only if the principal actor's mens rea is intentional, knowing, or reckless. Thus, the required mental state may be inferred from the nature of the criminal conduct alleged." State v. Hill, __ S.W.2d __, __ (Tenn. 1997). In this case, one of the indictments against the defendant provided that he "did unlawfully sexually penetrate [LAS], a person less than thirteen (13) years of age." Under Hill, this indictment is sufficient. The other indictment alleged that he "did unlawfully engage in sexual contact with [ANS], a person less than thirteen (13) years of age." This Court has previously held that, "Because sexual contact is defined [in T.C.A. § 39-13-501(6)] as intentional touching, the mens rea is necessarily implied." State v. Milton S. Jones, Jr., No. 02C01-9503-CR-00061, Shelby County (Tenn. Crim. App. filed March 7, 1997, at Jackson). Thus, both indictments are valid and this issue is without merit.

The evidence being insufficient to support the jury's verdict of assault, that conviction is reversed and the charge is dismissed. In all other respects, the judgment below is affirmed.

_____
JOHN H. PEAY, Judge

13

CONCUR:


_____
PAUL G. SUMMERS, Judge


_____
DAVID G. HAYES, Judge