IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 6, 2001 Session

## STATE OF TENNESSEE v. JAMES WHITELOW and ROBERT ROBERTSON

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 6214     Joseph H. Walker, Judge**

---

**No. W2001-00713-CCA-R3-CD - Filed December 18, 2001**

---

Defendants James Whitelow and Robert Robertson appeal their convictions for possession of cocaine in an amount over 26 grams with intent to deliver. Both argue the evidence was not sufficient to support their convictions. Whitelow also argues the forensic report was erroneously admitted into evidence, and the jury's verdict was the result of passion and prejudice caused by the prosecutor's statements regarding Whitelow's alias nickname. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Herman L. Reviere, Ripley, Tennessee (at trial), and Marcus M. Reaves, Jackson, Tennessee (on appeal), for the appellant, James Whitelow.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Robert Robertson.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendants, along with co-defendant Anthony Nixon, were jointly indicted for this offense in October 1995. On October 28, 1996, defendant Whitelow and co-defendant Nixon began their jury trial. Defendant Robertson's case had apparently been severed. Immediately after the jury was sworn, trial counsel moved for dismissal since the names of the defendants were not stated in the body of the indictment. The trial court granted the dismissal; however, this court reversed and reinstated the indictment. *See* State v. Nixon, 977 S.W.2d 119 (Tenn. Crim. App. 1997).

Upon remand, Nixon entered a plea of guilty. Defendants Whitelow and Robertson were then tried jointly before a jury in September 2000 and convicted. This appeal followed.

## FACTS

On April 22, 1995, James Whitelow, Robert Robertson, and Anthony Nixon traveled from Ripley, Tennessee, to Brownsville, Tennessee, in Whitelow's car. Anthony Nixon testified that when they arrived at Whitelow's sister's home, he contacted a drug dealer and arranged to purchase cocaine. Nixon said he walked alone to meet the dealer around the corner and purchased two ounces of cocaine for $1,500. He explained the cocaine was "in a chunk," which would have been processed into rocks for resale. He further stated each gram of cocaine, once processed, would have sold for $20.

Nixon testified he returned to the house with the cocaine. Later, they got back into Whitelow's car to return to Ripley. Whitelow was driving, with Robertson in the front passenger seat and Nixon in the back seat. As they traveled on a country road, they were spotted by Lauderdale County Sheriff Ronnie Rickard, who turned and began to follow the vehicle. Nixon testified that as they rounded a sharp curve outside the view of Sheriff Rickard, Nixon threw the cocaine out the car window.

Sheriff Rickard stopped the vehicle. Shortly thereafter, other officers, including Investigator John Thompson and Lt. Mark Williams, arrived to assist Sheriff Rickard. Thompson noticed the right front passenger window next to Robertson was the only window rolled down.

The car was searched with Whitelow's permission. Although no drugs were found inside the vehicle or on its occupants, a drug dog indicated and scratched on the armrest in the middle of the front seat, thereby indicating the smell of drugs.

Whitelow, Robertson, and Nixon were all unemployed. Each of them had a pager. A cellular telephone in the car apparently belonged to Whitelow, and $2,005 was found "hidden" in the phone bag. Robertson was carrying $1,412, and over $2,000 was in Nixon's shoe. All of the money was folded in $100 increments, and most of the currency consisted of $20 bills. Investigator Thompson testified that, based on his experience in narcotics investigations, cocaine was customarily sold in $20 amounts.

Sheriff Rickard and Lt. Williams drove to the area of the road where the sheriff lost sight of Whitelow's car. Williams noticed a plastic bag containing two chunks of cocaine base lying on the right side of the road, corresponding with the passenger side of Whitelow's automobile. No other vehicles were traveling the road when Williams found the bag.

Anthony Nixon testified the purpose of the trip to Brownsville was to get food stamps from Whitelow's sister. Nixon testified Whitelow was not present when he telephoned the drug dealer, and he did not tell Whitelow he was leaving to buy drugs. Nixon stated he had the drugs in his

pocket when he returned, and the others had no knowledge of the drugs. Nixon further testified he did not say anything to the defendants before he threw the drugs out the window, and they were unaware of what he threw out the window. He stated all of the cocaine belonged to him.

Agent Kay Sheriff, the TBI regional crime laboratory supervisor, testified she analyzed the substance sent to the lab by Inspector Thompson and determined it was 43.4 grams of Schedule II cocaine base.

The defense presented no proof, and a jury convicted the defendants of possession of cocaine over 26 grams with intent to deliver.

## SUFFICIENCY OF THE EVIDENCE

Both defendants argue the evidence was not sufficient to sustain their convictions. The state contends the circumstantial evidence justified the guilty findings. We agree with the state.

### A. Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Although the evidence of defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, for this to occur, the circumstantial evidence must be consistent with guilt of the accused, inconsistent with innocence, and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900.

Great weight is given to the jury verdict in a criminal trial; it accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Therefore, while following the above guidelines, this court must remember that the jury decides the weight to be given to circumstantial evidence. "The inferences to be drawn from such evidence, and the extent to which the circumstances are

consistent with guilt and inconsistent with innocence are questions . . . for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)(citation omitted); *see also* State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

## B. Analysis

It is an offense to knowingly possess a controlled substance with intent to manufacture, deliver, or sell. Tenn. Code Ann. § 39-17-417(a)(4). Such possession of over 26 grams of cocaine is a Class B felony. Tenn. Code Ann. § 39-17-417(i)(5). "Possession" may be actual or constructive. State v. Shaw, 37 S.W.3d 900, 902 (Tenn. 2001). To prove constructive possession, the state must establish the defendant had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others. *Id.* at 903; State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997). Presence in the area of the drugs or association with those possessing drugs is not alone sufficient to establish constructive possession. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).

We must view the evidence in a light most favorable to the state. In the instant case, while the drugs were thrown out the car window and no drugs were found in the vehicle or on either defendant, the drug dog indicated the odor of drugs was present on the armrest in the front seat of the vehicle between the two defendants. Nixon testified the defendants were unaware of his possession of the cocaine, and he threw the drugs out the window without advising the others of his intent to do so. However, the window next to Robertson was the only one rolled down. It was well within the jury's prerogative to disbelieve Nixon's testimony. Further, even though the defendants were unemployed, they each had a pager; both defendants were in possession of large amounts of cash; and all of the cash was grouped into $100 increments and included numerous $20 bills, which, according to the testimony, was a customary price relating to the sale of cocaine. Based upon the circumstantial evidence, we conclude the jury could reasonably infer beyond a reasonable doubt that both defendants constructively possessed cocaine over 26 grams with intent to deliver.

## CHAIN OF CUSTODY

Defendant Whitelow argues the state did not establish the appropriate chain of custody with regard to the drugs introduced at trial. Again, we disagree.

## A. Pertinent Facts

The proof showed that Lt. Williams, who picked up the bag of cocaine from the side of the road, turned it over to Investigator Thompson. Investigator Thompson testified he placed the drugs into an envelope, sealed it with evidence tape, and wrote his initials on the seams. He also marked the envelope with a case number, the offense, the names of the defendants, and the offense date.

Thompson stated the drugs were kept under seal and were sent to the TBI lab for testing. Thompson identified the bag of cocaine as the one he received from Lt. Williams and sent to the TBI lab. He also identified the envelope he used to package the drugs.

TBI crime laboratory supervisor Kay Sheriff testified she marked the envelope sent by Investigator Thompson with a lab number, the subjects' names, her initials, the date it was received by the lab, and the name of the officer delivering it. After she removed the contents and performed her analysis, she returned the substance to the envelope. She then sealed it with crime lab tape and wrote her initials and the date across the tape. Sheriff identified the lab report she attached to the envelope, the bag that had contained the cocaine, and the cocaine base she analyzed. She further testified her seal on the envelope was still intact, and there had been no apparent tampering.

## B. Requirements of Chain of Custody

In order to admit physical evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or must establish an unbroken chain of custody. State v. Holbrooks, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998). Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. Id. at 701. The identity of tangible evidence need not be proven beyond all possibility of doubt, and all possibility of tampering need not be excluded. State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000). The circumstances must establish a reasonable assurance of the identity of the evidence. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). The requirement that a party establish a chain of custody before introducing such evidence is "to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." Scott, 33 S.W.3d at 760 (citing State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)).

## C. Analysis

At trial, the defendants objected to Agent Sheriff's testimony on the basis that Investigator Thompson destroyed the chain of custody when he opened the envelope and removed the cocaine during his testimony, which was presented prior to Sheriff's testimony.

In this case, Investigator Thompson testified Lt. Williams handed him the cocaine found in a plastic bag by the side of the road and, after sealing it in a marked envelope, he sent it to the TBI crime lab. Kay Sheriff of the TBI crime lab testified she received the envelope sent by Thompson, tested its contents, and marked the envelope for identification. At trial, both Thompson and Sheriff identified the cocaine, the bag which originally contained the cocaine, and the envelope used by Thompson and the TBI to seal and transport the evidence. The fact that Thompson opened the envelope during his testimony prior to Sheriff's testimony did not destroy the chain of custody. The trial court properly allowed Sheriff's testimony regarding her analysis of the cocaine.

### PROSECUTOR'S COMMENTS ON DEFENDANT'S NICKNAME

The indictment stated defendant Whitelow was also known as "Borock." At trial, Anthony Nixon testified defendant Whitelow's nickname was "Borock." When the prosecutor asked Nixon the meaning of the name, the prosecutor referred to its similarity to the term "rock cocaine." Nixon responded, after the defendant's objection was overruled, that "Borock" had been Whitelow's name "long as I known [sic] him. That was all the way through school, through middle school, junior high, and everything."

Defendant Whitelow alleges the prosecutor acted improperly in making reference to the term, "rock cocaine," when she questioned Nixon regarding the source of Whitelow's nickname. We are unable to find reversible error.

Proof of use of an alias supports its inclusion in an indictment. State v. Zirkle, 910 S.W.2d 874, 887 (Tenn. Crim. App. 1995). However, it should be stricken if there is no evidence to show its relevance. Young v. State, 566 S.W.2d 895, 899 (Tenn. Crim. App. 1978). Absent a showing of prejudice, its inclusion is not reversible error. State v. Stephenson 878 S.W.2d 530, 540 (Tenn. 1994). We believe these same principles should apply to references to an alias during trial.

Here, references in the indictment and testimony to defendant's nickname of "Borock" was proper because Nixon knew the defendant as "Borock." However, we agree with defendant that it was inappropriate for the prosecutor to suggest it was associated with "rock cocaine," as it implies prior bad acts.

Nevertheless, we believe the error was harmless. This was an isolated question and was not lengthy nor repeated. *See* State v. Norris, 874 S.W.2d 590, 599 (Tenn. Crim. App. 1993). More importantly, Nixon's response clarified that defendant had the nickname from the time he was a youngster. The brief reference did not prejudice the defendant and did not affect the judgment. *See* Tenn. R. App. P. 36(a).

### CONCLUSION

Based upon our review of the record, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE