IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER 1998 SESSION



**FILED**

**April 21, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 01C01-9709-CC-00388 |
| Appellee, | ) | |
| | ) | Maury County |
| v. | ) | |
| | ) | Honorable William B. Cain, Judge |
| CHARLES D. MULLINS, | ) | |
| | ) | (Aggravated Sexual Battery) |
| Appellant. | ) | |

FOR THE APPELLANT:

William C. Bright
Assistant Public Defender
128 North Second Street
Pulaski, TN  38478

OF COUNSEL:
Shara Ann Flacy
District Public Defender
128 North Second Street
Pulaski, TN  38478

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN  37243

Lisa A. Naylor
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN  37243

T. Michael Bottoms
District Attorney General
P. O. Box 459
Lawrenceburg, TN  38464

Stella L. Hargrove
Assistant District Attorney General
P. O. Box 459
Lawrenceburg, TN  38464

Jesse Durham
Assistant District Attorney General
P. O. Box 1619
Columbia, TN  38402

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SENIOR JUDGE

# O P I N I O N

The appellant, Charles D. Mullins, referred herein as "the defendant," appeals as of right from a judgment of the Maury County Criminal Court as a result of jury convictions for two counts of aggravated sexual battery. After a sentencing hearing, the trial court imposed Range II sentences of sixteen years for each count. The sentences were ordered to run consecutively in the Department of Correction. The defendant presents seven appellate issues for review:

1. Whether the trial court erred in ruling that if the defendant should testify in the trial the state could impeach him with a prior conviction for sexual assault.

2. Whether the trial court erred in not granting a motion to sever the offenses since none of the incidents elected at the end of the state's proof involved the same transaction and the unfair prejudicial effect of the joint trial of these counts denied the defendant a fair trial.

3. Whether the trial court erred in admitting, over the defendant's objection, testimony concerning the defendant's possession of pornography, and the children viewing pornography in the defendant's room, since it constituted a prior bad act whose unfair prejudicial effect outweighed any probative value.

4. Whether the trial court erred in not instructing the jury as to the lesser included offense of simple assault as to the victim, KB.[1]

5. Whether the trial court erred in allowing the jury to return a verdict in the defendant's absence.

6. Whether the trial court erred in finding the defendant a Range II offender, since it wrongfully concluded the defendant's sexual assault conviction in Texas was a felony that could be used to increase the range of punishment.

7. Whether the trial court erred in applying the enhancement factors of more than one victim being harmed in each incident, the age of the victims made them particularly vulnerable, and the defendant's desire for gratification, thereby sentencing the defendant to two sixteen-year sentences to run consecutively.

After a thorough review of the entire record, briefs of the parties, and applicable law, we affirm the trial court's judgment.

---

[1]It is the policy of this Court not to reveal the identity of minor victims of sexual abuse. The victims will be referred to by their initials.

## FACTUAL BACKGROUND

In indictment no. 9679, the Maury County grand jury charged the defendant with three counts of aggravated sexual battery, all alleging the victims were less than 13 years of age. In count one, the defendant was accused of the aggravated sexual battery of KB, a child less than 13 years of age, in August - September 1995. In count two, the defendant was accused of the aggravated sexual battery of TS, a child less than 13 years of age, in August - September 1995. In count three, the defendant was accused of the aggravated sexual battery of EC, a child less than 13 years of age, on or about November 16, 1995. As a result of a three-day jury trial, the defendant was found guilty in counts one and three of aggravated sexual battery on KB and EC. In count two, the defendant was found not guilty as to the child, TS. In view of the issues raised on appeal, it is necessary to set forth the facts leading to the defendant's convictions.

## TS's Testimony

TS, who was age 11 at the time of trial, testified that she and her family lived in McGee's Trailer Park from May to September of 1995. The child was friends with KB and EC. TS, KB, EC, Michael and Timmy, who were EC's cousins, and TS's stepbrother all played at the defendant's home on a regular basis during the summer and after school. While at the defendant's house, the children watched movies, and TS, KB, and sometimes Michael, would play cards in the defendant's bedroom. The defendant also played children's games, such as tag or hide and go seek, outside with them. TS described a red van in the defendant's yard that had been given to the children as a playhouse and a black van that he used to take TS, KB, EC, and the other children to McDonald's or to the park to swim. The defendant's mother was a resident of the home but usually remained in the living room during the children's visits.

On one occasion, while KB and TS were in the defendant's bedroom, TS testified that the defendant used a gray massager on her front private part. TS was lying on the bed with her feet touching the floor. The defendant also rubbed KB with the massager. The victim described "nasty pictures" of girls that were displayed on the TV and stereo in the defendant's bedroom. She saw some cassettes containing sexually explicit pictures

3

on the wall, but the defendant did not talk to the victim about the pictures or cassettes.

On another occasion, TS saw the defendant tickling KB with his finger on her front private part. KB started crying, got up, and ran to her house with TS. The defendant followed the two children and said, "If you accept my apology, I'll give you two unicorn pictures." KB told her mother about the incident. TS described a third incident in the defendant's bedroom when Michael Cobb tried to get on top of her, but she resisted. The defendant was present at the time.

TS denied ever leaving any underwear at the defendant's home. She testified that the defendant told "us" that he had a silencer and that he described it as something that goes on the end of a gun so nobody can hear if the gun is shot. TS also stated that the defendant never removed her clothes or his clothes and never touched her with his private part.

### KB's Testimony

KB, age 10 at the time of trial, testified that she lived with her mother in the McGee Trailer Park area in 1995. KB, TS, EC, and Michael and Timmy Cobb went to the defendant's home almost every day. There, they would have fun and play games, such as hide-and-seek and Uno, a card game. KB stated that she and TS played cards with the defendant in his bedroom. She also described the red "play van" in the defendant's yard and the black van that the defendant used to transport the children. KB testified that the defendant allowed both she and TS to sit in his lap and drive the black van.

KB testified that the defendant touched her front private part with a gray massager on one occasion when she and TS were lying on the bed in the defendant's bedroom. The defendant also used the massager on TS. KB stated that both children were clothed and that she told the defendant to stop.

On another occasion while inside the red "play van," the defendant touched KB on her front private part with his hand during a tickle game invented by TS. TS was present at the time. KB told the defendant to leave her alone, and both children ran to KB's home. While KB was telling her mother what the defendant had done to her, the defendant appeared, saying he was sorry. During these episodes, the defendant did not attempt to

4

remove KB's clothes or expose himself. Although the victim saw some pornographic pictures of girls on the defendant's bedroom wall and in his van, the defendant did not talk to her about these pictures. She also identified cassettes with sexually explicit covers that were hanging on the defendant's bedroom wall.

**Other Testimony**

EC's cousin, Michael Cobb, age 10 at the time of trial, testified he now lives in Texas but lived in the McGee Trailer Park in 1995. Michael testified he occasionally went to the defendant's home with TS, KB, EC, Timmy, and Travis. In August and September, the witness went to the defendant's home almost every day. The defendant had two bedrooms, one for him and one for his mother. On the defendant's bedroom wall, the witness saw "nasty pictures." The witness also saw some cassettes in the defendant's black van, which TS, KB, EC, and the others would ride in. According to the witness, the defendant told him that he had a massager, and he had stuck it in KB and TS's "pee-pee" while they were lying on the bed. The defendant told the witness not to tell anyone. On one occasion, the witness saw the defendant touch TS and KB on "the bottom" while they were on a swing. The witness testified he and his cousin saw the defendant stick a tent rod in TS's "bottom." On another occasion, the defendant told him to get on top of TS.

Mrs. Vickie Beech, mother of KB, testified she knew both the defendant and his mother and had visited them in their home. The defendant owned two vans, an orange one, in which the children played, and a black one. The defendant would take TS, KB, Michael, Timmy, and other children swimming and to McDonald's, accompanied by the witness. Nothing unusual occurred during any of these outings. In August or September, Mrs. Beech testified that her daughter, KB, and TS came home, and KB told her that the defendant had tickled her and rubbed against her "private," and she was scared. TS also told Mrs. Beech that the defendant had touched KB. At this same moment, the defendant walked up and KB started crying. The defendant told Mrs. Beech "that he was tickling her on the ground and that she got up, and he rubbed her private. And she ran home. . . . [H]e didn't want to lose their friendship because of this." The defendant kept saying, "I'm sorry." Mrs. Beech testified that she had seen a pornographic picture in the defendant's

5

black van and that, on one occasion, she had to admonish the defendant for showing pornographic pictures to TS and KB in the orange van (playhouse).

Terry Hanvy, TS's stepfather, testified that the children and the defendant had chosen each other as friends and spent their afternoons after school playing games at the defendant's house. Mr. Hanvy recalled seeing KB sitting in the defendant's lap driving his black van. He also recalled an incident in which the defendant wanted TS and her stepbrother to spend the night with him, but Mr. Hanvy refused to allow it.

James Shannon, Columbia City Police Officer and former Maury County Deputy Sheriff, testified he assisted George Holt, Criminal Investigator, in obtaining a search warrant for the defendant's residence. In November 1995, Officer Shannon and Donnie Ray, Reserve Deputy Sheriff, executed the search warrant at the defendant's home, looking for sexually explicit material. Deputy Ray testified that he remembered seeing "a lot of pornography" in the defendant's bedroom during the search, including about a hundred cassettes with pictures on them and pictures on the walls. He also saw the name "Tiffany" written across the ceiling above the bed and some children's books and other items in the bedroom. Officer Shannon seized a picture of a nude woman; a body massager; five cassettes; numerous covers from other cassettes; a page from a child's coloring book with EC's first name on it, and a Led Zeppelin CD.[2]

Steve Cobb, father of EC, testified that on November 16, 1995 he returned home from work at 2:40 p.m. Cobb lived next-door to the defendant. EC arrived home from kindergarten and proceeded to the defendant's home, which she usually did every day. When Cobb went to ask the defendant for help in loading a love seat onto a truck, he observed the defendant come out of his bedroom without a shirt, followed by his daughter. The defendant assisted Cobb in loading the love seat. Cobb left his daughter at the defendant's home while he took the furniture to a storage facility. Later that night, Cobb ran some bath water for his daughter. When the child got into the tub, she screamed and said she was hurting. When Cobb asked her where she was hurting, the child pointed to her vaginal area. Cobb inquired if anyone had touched her, and she told him that the

---

[2]From a review of the record, it appears the five cassettes were not reviewed by the jury, but the sexually explicit covers of the other cassettes were shown.

6

defendant had put his finger in her.

Dr. Kathleen Dodd, emergency room physician for the Maury County Regional Hospital, testified she examined EC, age 5, on November 16, 1995. Dr. Dodd found no trauma or tears in the child's vaginal wall and found her hymen to be intact. Dr. Dodd did find a foreign hair in the vaginal area. The child was referred to the Our Kids Center in Nashville.

Ms. Sue Ross, licensed nurse practitioner and expert in suspected child abuse offenses, testified she conducted a pelvic examination on EC at the Our Kids Center in Nashville. With the use of a colposcope, Ms. Ross examined the vaginal and rectal areas of the child. Ms. Ross found an irritated area at the base of the entrance to the genital area. As to the rectum, Ms. Ross found tiny breaks in the skin around the rectal area. Ms Ross testified the irritation found in the genital area could be consistent with the insertion of a finger, but could also be attributed to a large number of other reasonable causes.

The victim, EC, attempted to testify, but was unable to answer any questions. It was stipulated by the state and the defendant that the hair sample found on EC was not consistent with known hair samples of the defendant.

The defendant elected not to testify. However, the defendant called Ms. Windy Capley, from the Department of Children's Services, to impeach the victim, KB, concerning the answers given by KB during an interview. Mrs. Virginia Parker, the defendant's mother, testified about her observations of the children around her son.

Based upon the entire testimony, the jury found the defendant guilty of the aggravated sexual battery of KB (count 1) and EC (count 3), but not guilty of the allegation concerning TS (count 2).

## APPELLATE ISSUES

### Part A

### Defendant's Prior Conviction

The defendant contends the trial court committed error in permitting the state the opportunity to cross-examine the defendant regarding a prior sexual assault conviction in Texas.

7

Pursuant to Tenn. R. Evid. 609(a)(3), the state gave written notice to the defendant on October 7, 1996, that it intended to use the defendant's convictions for sexual assault and attempted aggravated assault at trial. On October 31, 1996, the defendant filed a motion for a hearing prior to trial to exclude these convictions. Tennessee Rule of Evidence 609(a)(3) provides that the trial court, upon request, must determine if the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. Further, the trial court may rule on the admissibility of such proof prior to the trial, but, in any event, shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination. At the conclusion of the state's proof, the defendant, without testifying or offering a proffer of proof, moved the trial court to rule on the admissibility of his prior convictions. The trial court denied the state the right to confront the defendant about a conviction for unauthorized use of a motor vehicle in 1979. As to the other convictions, the court ruled, "On the others, I'm going to overrule your objection. I think they're usable for impeachment purposes."

First, we recognize the trial court did not conduct a weighing process pursuant to Rule 609(a)(3). In making a determination, the trial court should: (1) assess the similarity between the crime on trial and the crime underlying the impeaching conviction; and (2) analyze the relevance the impeaching conviction has to the issue of credibility. *State v. Barnard,* 899 S.W.2d 617, 622 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1994); *State v. Farmer,* 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992) (citing Neil P. Cohen, et al., *Tennessee Law of Evidence* § 609.9 at 288 (2d ed. 1990)).

In *Barnard,* 899 S.W.2d at 622, this Court construed Rule 609(a)(3) and observed that the probative value of a prior sexual battery conviction on the issue of an accused's credibility was "slight." *See also*, *State v. Steven O. Ford,* No. 01C01-9403-CC-00089, 1995 WL 544004 (Tenn. Crim. App., Nashville, Sept. 14, 1995) (rape). Similarly, specific instances of sexual conduct have been held not to be probative of a witness's truthfulness or untruthfulness under the similarly worded provisions of Rule 608. *State v. Baxter,* 938 S.W.2d 697, 702 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1996). In all likelihood had

8

the defendant testified, the case would have been subject to a remand for a new trial.

Absent specific factual findings to support the trial court's ruling, we disagree with the mere statement of the trial court that the convictions were usable for impeachment. Nonetheless, we find that the defendant has failed to establish that he was prejudiced by this ruling. Additionally, the defendant did not make an offer of proof to preserve the issue for appeal. *See Tennessee Law of Evidence,* § 609.9 at 377 (3d ed. 1995). There is no merit to this issue.


**Part B**

**Denial of Severance**

At the conclusion of the state's proof, the state made an election as to the two offenses involving the victim, KB. The state elected to submit to the jury the allegation of the inappropriate tickling, where the defendant touched KB's private part, and not the incident on the bed, when the defendant touched KB and TS with a body massager. The victim, TS, was a witness to this offense. Also, the jury was to consider the allegation of the inappropriate touching of TS with the massager. Further, the jury was to consider the allegation of November 16, 1995, wherein the defendant was alleged to have inserted his finger in EC's genital area.

The decision to grant a severance is left to the sound discretion of the trial court. *State v. Furlough,* 797 S.W.2d 631, 642 (Tenn. Crim. App. 1990). This discretion will not be disturbed unless the defendant is unfairly or unduly prejudiced. It is the defendant's responsibility to show that he is clearly prejudiced by the trial court's refusal to grant a severance of offenses. *State v. Hodgkinson,* 778 S.W.2d 54, 61 (Tenn. Crim. App. 1989); *State v. Wiseman,* 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982).

Prior to trial and pursuant to Tenn. R. Crim. P. 14(b)(1), the defendant filed a motion for a severance of all three counts. The defendant contends these offenses are not part of a common scheme or plan, and evidence against one is inadmissible on the trial of the others. In response to the defendant's motion, the trial court was concerned about count three, the allegation of EC, being properly joined with counts one and two but decided that the three counts could go to trial together. The trial court declined to make a ruling on the

9

two prongs of Tenn. R. Crim. P. 14 (b)(1), "the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others;" however, the trial court denied the defendant's motion for severance.

First, we find that a joinder of all three counts would be permissible under Tenn. R. Crim. P. 8(b), "if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character." We now must address the trial court's decision not to consider the two prongs until the proof was offered. The first prong of Tenn. R. Crim. P. 14(b)(1) requires the trial court to find a common scheme or plan. A common scheme or plan for severance purposes is the same as a scheme or plan for evidentiary purposes. *State v. Hoyt,* 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995); *State v. Hallock,* 875 S.W.2d 285, 289-90 (Tenn. Crim. App. 1993). There are three categories of "common scheme or plan" evidence: (1) distinctive designs or signature crimes; (2) a larger, continuing plan or conspiracy; and (3) the same transaction. Hoyt, 928 S.W.2d at 943 (citing Neil P. Cohen, et al., *Tennessee Law of Evidence*, § 404.11 (2d ed. 1990)).

In the first category, similar crimes committed by a defendant are "admissible to show the defendant's **modus operandi** from which it may be inferred that the defendant probably committed the nearly identical crime for which he or she is on trial." *Id.* To determine whether certain crimes fit into this category, "the test is not whether there was evidence that a defendant committed both crimes, but whether there was a unique method used in committing the crimes." *Hoyt,* 928 S.W.2d at 943; *State v. Young,* 566 S.W.2d 895, 898 (Tenn. Crim. App. 1978). The second category, "continuing plan or conspiracy," involves not the similarity between crimes, but the common goal or purpose at which they are directed. Neil P. Cohen, et al., *Tennessee Law of Evidence* § 404.11 at 183 (3d ed. 1995). As to the third category, the crime must occur within a single criminal transaction. *Hallock,* 875 S.W.2d at 290. This category permits proof of acts occurring before and after the offense at issue to be admitted to provide the trier of fact with the full story. Neil P. Cohen, et al., *Tennessee Law of Evidence* § 404.11 at 184 (3d ed. 1995).

For two or more offenses properly joined under Rule 8(b) in the same indictment, and the defendant has filed a motion to sever the offenses for trial, Rule 14(b)(1) requires that the trial court: (1) find that the offenses are part of a common scheme; and (2) comply

10

with the procedural requirements of Tenn. R. Evid. 404(b). *Hoyt,* 928 S.W.2d at 944. In a pretrial hearing, the trial court must determine that evidence of bad acts or prior crimes is relevant to a material issue other than character. Thus, evidence of other crimes may be admissible to show (1) motive, (2) intent, (3) guilty knowledge, (4) identity, (5) absence of mistake or accident, or (6) a common scheme or plan for commission of two or more crimes so related to each other that the proof of one tends to establish the other. *Collard v. State,* 526 S.W.2d 112, 114 (Tenn. 1975); *see State v. Morris*, 788 S.W.2d 820, 821-22 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1990) (common scheme to sexually molest young victims). The trial court must conduct a balancing test in weighing the probative value of such evidence against its unfair prejudicial effect. *State v. McKnight,* 900 S.W.2d 36, 51 (Tenn. Crim. App. 1994), *per. app. denied* (Tenn. 1995). In *McKnight,* 900 S.W.2d at 51, this Court set out factors to consider when conducting this balancing test. These factors include "the prosecution's need for the evidence, the likelihood the defendant committed the other crimes, and the degree of its relevance." *Id.* The Court also added that "the similarity of the acts makes the probative value particularly significant." *Id.*

### Counts One and Two

Since the trial court did not conduct a hearing as required by Tenn. R. Evid. 404(b), we elect to complete an analysis as the victims' testimonies are in the record before us. *Hoyt*, 928 S.W.2d at 945. We must first determine whether the offenses charged were part of a common scheme or design that would permit consolidation at trial. The Tennessee Supreme Court has adopted the language of 23 C.J.S. Criminal Law § 931[3] governing

---

[3]The current version of the text appears at 22A C.J.S. Criminal Law § 560 (1989) as follows:

> Under, or apart from, statutes or rules of criminal procedure, ordinarily, consolidation for trial is permissible or proper where the offenses charged are similar, related, or connected, or are of the same or similar character or class, or involve or arose out of the same or related or connected acts, occurrences, transactions, series of events, conduct, or set of circumstances, or are based on acts or transactions constituting parts of a common scheme or plan.
>
> Also, consolidation for trial is permissible or proper where the offenses charged are of the same pattern and committed in the

(continued...)

11

joinder and severance as follows:

> Ordinarily consolidation for trial or refusal to order a severance or separate trial is permissible or proper where the offenses charged are similar, related, or connected, or are of the same or similar character or class, or involve or arose out of the same or related or connected acts, occurrences, transactions, series of events, or chain of circumstances, or are based on acts or transactions constituting parts of a common scheme or plan, or are of the same patterns and committed in the same manner, or where there is a common element of substantial importance in this commission, or where the same, or much the same, required in their prosecution, and if not joined for trial the repetition or reproduction of substantially the same testimony will be required on each trial.

*Wiseman*, 643 S.W.2d at 362-63 *(*citing *State ex rel Gann v. Henderson*, 221 Tenn. 209, 425 S.W.2d 616-618 (1968)).  The circumstances surrounding the complaints of KB and TS are sufficiently similar to establish a distinctive design, i.e., **modus operandi**, thus establishing a common scheme or plan.  Both children testified that they were touched by the defendant with the gray massager in their private areas while in the defendant's bedroom on the same day.  KB was inappropriately touched in her front private area by the defendant during a tickle game, which was witnessed by TS.  Even if the two counts had been severed, each child would have been a factual witness as to the other's complaint.  Clearly, the offenses occurring in the defendant's bedroom and during the tickle game meet the qualification of a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the other.  *McKnight*, 900 S.W.2d at 51; Tenn. R. Evid. 404(b).  We find counts one and two were properly joined for trial.  There is no merit to this issue.

**Count Three**

From our analysis, we conclude that the offense involving EC was also part of a common scheme or plan in conjunction with counts one and two.  This Court has allowed

---

[3](...continued)

> same manner, or where there is a common element of substantial importance in their commission, even though the offenses charged do not relate to the same transaction and were committed at different times and places against different victims, or where the same, or much the same, evidence will be competent and admissible or required in their prosecution, and if not joined for trial the repetition or reproduction of substantially the same testimony will be required on each trial.

joinder of sexual offenses when the defendant uses a distinctive pattern of behavior to entice young victims, and the pattern is relevant to a nonpropensity issue, such as intent or absence of mistake. For example, in *State v. McKnight*, denial of the defendant's motion to sever was proper when the manner in which the defendant selected and prepared his victims for sexual contact formed a distinctive pattern, even though there were some differences between the specific allegations against the defendant. *See McKnight*, 900 S.W.2d at 52. In that case, the defendant raised a defense that the boys had mistaken his proper expressions of affection as sexual. *Id.* at 46. This Court found it significant that all of the victims were boys between the ages of 9 and 15, who lived in the defendant's neighborhood and gathered at the defendant's home, which they referred to as "the shack." Many of the victims were from broken or disadvantaged homes. Generally, the defendant had first established a relationship of friendship and trust with his victims by various means, such as taking them out to eat, playing games and watching movies with them, and paying for their recreational activities. As a prelude to sexual contact, the victims were eventually shown pornography at "the shack," and most of the sexual contacts occurred there. Because the similarities between the allegations far outweighed the differences, this Court stated that this was sufficient to establish "such a distinctive design that evidence of each of the crimes could be used in the prosecution of the other." *Id.* at 52.

Likewise, in *State v. Morris*, 788 S.W.2d 820 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1990), this Court found that numerous similarities between the various charges against the defendant established a common scheme and plan to molest the youngsters on his tumbling team, despite the fact that the offenses occurred over a four-year period. *Id.* at 822-23. All nine victims were young boys from a local black community between the ages of nine and twelve years to whom the defendant became a father-like figure. The defendant enticed the youngsters to his home by providing games and entertainment for them. He manipulated his victims by proceeding slowly with the sexual molestations, usually beginning with inappropriate touching done in a playful manner, so as not to frighten the victims, and later progressing to more extensive contact. All of the incidents occurred in the defendant's bedroom or another room of defendant's house while he was

13

alone with the victim. The defendant, as a school bus driver and the tumbling team leader, was perceived to be a positive force in the community and used this position to select and nurture relationships with his prospective victims. *Id.* The Court stated:

> We conclude that the defendant's various offenses were parts of a common scheme and plan on his part to sexually molest these young victims. The defendant's acts were of an ongoing nature, carried out regularly over a four-year period. Had the various counts of the indictment been tried singly, the evidence concerning the other incidents would have been admissible. The various offenses were so related in time and circumstances that proof of one tended to elucidate and establish the others.

*Id.* at 823. Additionally, the Court found that evidence from each incident would be relevant in a separate trial of the others to show intent or absence of mistake or accident, and, therefore, severance was properly denied by the trial court. *Id.*

In the present appeal, the state argues that denial of severance was proper, because the offenses are part of a common scheme or plan that goes to a relevant issue, such as intent or absence of mistake. We agree. While the incident involving EC occurred at a separate time than that of TS and KB, that alone is not enough to require severance. The facts surrounding all three offenses are similar enough for us to find that the defendant had both a common scheme or plan to molest his young victims and a distinctive manner by which he accomplished this, much like the defendants in *McKnight* and *Morris*. KB, TS, and EC were all young girls between 5 and 10 years of age, who lived in the defendant's neighborhood and played at his home on a regular basis. The defendant assumed a positive role as a babysitter and a friend for the prospective victims. As a prelude to sexual encounters, the defendant nurtured a trusting relationship with the children by providing food, drinks, and entertainment for them and by playing games with them. He took the girls on outings to the swimming pool, park, or to get something to eat. All three girls were exposed to pornography in the defendant's bedroom, where they were encouraged to play, and all three described incidents of sexual contact in the bedroom or at the defendant's house. Each of the instances of sexual contact involved the defendant putting his hand or other object in the victim's genital area. There were items from two of the victims displayed in the defendant's bedroom, i.e., EC's coloring picture and "Tiffany" written on the ceiling with stars around it. All of the offenses occurred within a three- to four-month

14

period and likely ended only because EC told her father what the defendant had done to her, which caused various authorities to become involved. The similarities between these offenses far outweigh the differences and point to a common scheme to molest these young girls. The evidence involving EC is part of this common scheme, and the crimes are so related that proof of one tends to establish the others. In addition, the evidence of the allegations involving EC would be admissible in the separate trials of the others to show intent and absence of mistake as to the tickling incident with KB. Applying the balancing test of Tenn. R. Evid. 404(b), we find the probative value of the evidence involving EC is not outweighed by possible prejudice to the defendant in joining it with the other offenses, and the trial court did not abuse its discretion in denying severance of count three.

Furthermore, the defendant has failed to clearly show that he was prejudiced by the denial of severance. On appeal, the defendant does not specifically state how he was prejudiced by the joinder of offenses but relies on *State v. Hoyt*, 928 S.W.2d 935 (Tenn. Crim. App. 1995), for his contention that the "taint" of allowing the state to introduce both incidents involving KB "would bolster the other offenses." We disagree. The *Hoyt* court found a unique design in the incidents involving the molestation of two of the defendant's step-granddaughters but held that the defendant was prejudiced by a denial of severance. However, this prejudice stemmed from the fact that the indictment left the dates of these offenses open for sixteen months, which would allow evidence of other unindicted bad acts for both victims covering the entire period to be introduced against the defendant. The court was concerned that such evidence from one victim would have a "bolstering" effect on the other joined victim's case. *Hoyt*, 928 S.W.2d at 945.

The prejudicial effect of joinder that concerned the *Hoyt* court is not present in the defendant's case. The fact that the defendant was found guilty on the count involving KB, and not on that involving TS, shows that the jury was able to separate the two most similar and closely tied offenses, and that no "bolstering" occurred. It is logical to assume that the jury was equally as capable of separating the allegations involving KB and EC, which were not as closely connected, to reach a proper conclusion. This issue is without merit.

Finally, any error committed by the trial court in denying severance is harmless. When the proof exceeds reasonable doubt on every count on which the defendant is

15

convicted, the outcome would not likely have been changed by separate trials. *See State v. Hallock*, 875 S.W.2d 285 (Tenn. Crim. App. 1993). Here, the evidence presented at trial was more than sufficient to convict the defendant on counts one and three involving KB and EC and exceeded reasonable doubt.

## Part C

## Admission of Pornographic Material

The defendant alleges the trial court erroneously admitted evidence of the defendant's possession of pornographic material and permitted the victims to testify as to their observations of the pornographic material. The state argues this issue is waived in that the defendant did not raise this issue in his motion or amended motion for new trial. From our review of the record and hearing of the motion for a new trial, the defendant did raise these issues.

The defendant contends the trial court failed to conform to the requirements of Tenn. R. Evid. 404(b), citing *State v. McCary,* 922 S.W.2d 511, 514 (Tenn. 1996). The state counters that the admissibility of the pornographic material was relevant pursuant to Tenn. R. Evid. 401. That Rule states:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The admissibility of evidence is dependent upon its relevance under Rules 401 and 402. The relevance of proffered evidence is determined by the issues presented for resolution in the trial, which in turn, are determined by the elements of the offense charged and the defense asserted by the accused. As stated in the Advisory Commission Comment to Rule 401, "to be relevant, evidence must tend to prove a material issue." *State v. Dubose,* 953 S.W.2d 649, 653 (Tenn. 1997). The determination of whether proffered evidence is relevant in accordance with Tenn. R. Evid. 402 is an abuse of discretion. *Dubose,* 953 S.W.2d at 652; *State v. Forbes,* 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). Once a trial court complies with the requirements of Rule 404(b), then its ruling will not be disturbed, unless there has been an abuse of discretion. The trial court's compliance must be substantial. *Dubose,* 953 S.W.2d at 652.

16

It still remains strong Tennessee law that evidence of other crimes, or bad acts or wrongs, is inadmissible when the defendant is on trial for a crime or an act of the same character. *State v. Rickman,* 876 S.W.2d 824, 829 (Tenn. 1994). It is only through a proper determination pursuant to Tenn. R. Evid. 404(b) that other crimes, wrongs, or acts become relevant and thus admissible. The conditions which must be satisfied before allowing proof of other crimes, wrongs, or acts are:

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait, and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

Also, the trial court must find by clear and convincing evidence that the defendant committed the other crimes. *McCary,* 922 S.W.2d at 514 (citing *State v. Parton,* 694 S.W.2d 299, 303 (Tenn. 1985)). The trial court held an out-of-jury hearing, listened to the state's proposed testimony of the two victims and Michael Cobb concerning "nasty or dirty pictures" and cassettes covers. The trial court held the proffered evidence was admissible under Rule 404. From our review of the record, the trial court did not fully comply with the requirements of Rule 404(b). The trial court failed to set out in the record the material issue to which the evidence was relevant and made an inadequate determination of the probative value versus unfair prejudice.

We will complete the analysis to determine the admissibility of the evidence relating to the pornographic pictures and cassettes. In McCrary, 922 S.W.2d at 514, our Supreme Court indicated three instances where other uncharged wrongs or bad acts may be admissible: (1) to prove identity (including motive and common scheme or plan); (2) to prove intent; and (3) to rebut a claim of mistake or accident if asserted as a defense. In the present case, the evidence and testimony regarding the victims' exposure to pornography is relevant on several grounds. We have found a common scheme or plan on the part of the defendant to molest these victims, and the defendant's intent is an

17

element of the charged offenses of aggravated sexual battery. In addition, the defendant has raised what is essentially a defense of accident, claiming that he did not mean to touch KB in a sexual manner during the tickling incident at his house.

There is clear and convincing evidence in the record that the defendant had the pornography and exposed the children to it. TS and KB testified that they saw "nasty pictures" and cassettes in the defendant's bedroom. Michael Cobb testified that he saw pornographic pictures and cassettes in the defendant's bedroom and in the van. The defendant and Cobb did talk about the pictures, but the victims were not present. KB's mother testified that she had to stop the defendant from showing KB and TS a pornographic picture in the "play van" under the guise of reading to the girls. The exposure of these victims to sexually explicit material was especially relevant in this case as part of the common scheme or plan used by the defendant, along with the overtures of friendship, to prepare the children for his sexual advances. The evidence was also probative on the issue of the defendant's intent and to refute his claim that he accidentally touched KB's private part.

Furthermore, the probative value of this evidence is not outweighed by unfair prejudice to the defendant. The fact that the jury did not find the defendant guilty of the allegations involving TS shows that the defendant was not unfairly prejudiced by the admission of this evidence. We believe the trial court was correct in admitting the evidence concerning the pornographic material.

Even if the admission by the trial court had been erroneous, the error is harmless, given the substantial proof of the defendant's guilt in sexually abusing these children. The testimonies of TS and KB were identical in most details. The recovery of the massager, the defendant's attempts to sway KB's mother, and the testimony of Michael Cobb as to the defendant's admissions, the testimony of EC's father, Steve Cobb, and the medical proof were sufficient, in the jury's mind, to find the defendant guilty of the offense. There is no merit to this issue.

**Part D**

**Included Offense**

The defendant contends the trial court failed to charge the included offense of simple assault in the offense of aggravated sexual battery involving the complaint of KB. The state argues there is no evidence that the defendant committed a simple assault. Also, the state alleges the defendant failed to raise this issue in his motion for a new trial or in his amended motion for a new trial. From our review of the record, the defendant properly raised this issue, but it was rejected by the trial court. We do not need to reach the issue of whether or not simple assault is a lesser included offense of aggravated sexual battery to resolve this issue. If any error occurred on the part of the trial court in failing to

instruct the jury as to the lesser crime, it was harmless.[4]

In *State v. Williams*, 977 S.W.2d 101 (Tenn. 1998), our Supreme Court conducted a harmless error analysis on the trial court's failure to instruct the jury on voluntary manslaughter as a lesser offense of first degree murder. Although the facts in *Williams* may have supported an instruction on voluntary manslaughter, the trial court only charged the jury with the elements of first degree murder and the lesser grade or class offenses of second degree murder and reckless homicide. The Supreme Court found that:

> [T]he trial court's erroneous failure to charge voluntary manslaughter is harmless beyond a reasonable doubt because the jury's verdict of guilt on the greater offense of first degree murder and its disinclination to consider the lesser included offense of second degree murder clearly demonstrates that it would not have returned a verdict on voluntary manslaughter.

*Id.* at 106.

Clearly, the jury in the present case had before it the elements of aggravated sexual battery. The jury was also instructed on sexual battery as a lesser grade offense but convicted the defendant of the greater offense. This leads us to believe that the jury would not have returned a verdict of simple assault.

## Part E

## Jury Verdict

The defendant contends he is entitled to a new trial, because the trial court erred in accepting the jury's verdict in his absence, citing Tenn. R. Crim. P. 43(a). The state argues the defendant's absence was due to a voluntary overdose of drugs, which required hospitalization.

Rule 43(a), Tenn. R. Crim. P. provides "Unless excused by the court upon the defendant's motion, the defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." Rule 43(b) sets forth when a defendant is not required to be present:

---

[4]Although we are not deciding whether or not simple assault is a lesser included offense of aggravated sexual battery today, we have some doubts as to whether it would qualify as such under our Supreme Court's holdings in *State v. Trusty*, 919 S.W.2d 305, 310-11 (Tenn. 1996), and *State v. Cleveland*, 959 S.W.2d 548, 553-54 (Tenn. 1997).

The further progress of the trial to and including the return of the verdict and imposition of sentence shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present:

> (1) Voluntarily is absent after the trial has commenced (whether or not he or she has been informed by the court of the obligation to remain during the trial).

As to this unusual set of circumstances, the record establishes the jury instructions and submission of the case were given to the jury at 1:38 p.m. on December 11, 1996. The jury was ready to report their verdict at 3:34 p.m. During this time period, the defendant was taken to the hospital for emergency treatment. After thoroughly considering Rule 43 (a) and (b), the trial court elected to accept the jury verdict in the defendant's absence. We quote a portion of the trial court's ruling:

> The jury retired to consider of its verdict at 1:34 P.M. this afternoon, December 11, 1996. It is now 3:34 P.M. Now, the defendant was present throughout the trial of the case and throughout the charge. The jury retired to consider of its verdict. The defendant was present at that time.

> Shortly after the jury retired to consider of its verdict, in the courtroom, the defendant had some form of visible distress, in which he appeared to revert to a semiconscious state, and was pale, clammy, and nonresponsive.

> There was a Licensed Practical Nurse, who happened to be in the courtroom at the time, came forward to render assistance.

> The hospital was called and the emergency medical team came to the courtroom. The defendant was still nonresponsive. The jail nurse was also in the courtroom, and the defendant continued in a nonresponsive state. He was taken by the emergency medical team to the emergency room at the hospital.

> I made a call to the emergency room, told them the circumstances, and asked for a response as to the defendant's condition at the earliest possible time. About a half hour ago, I received a response that indicated the hospital intended to keep the defendant, at least overnight, and the preliminary diagnosis was an overdose of Elavil, which may have occurred during lunch hour. That is not a definitive diagnosis, and I received it only secondhandedly. But the decision of the medical personal is that the defendant will not be released.

Further, the trial court found if the defendant indeed overdosed on Elavil, it was a voluntary act on his part.

A review of the record at the motion for a new trial establishes the defendant did not offer any proof as to the reasons why he suddenly was taken ill or "overdosed" involuntarily

21

due to a prescription drug.

We agree with the trial court that the defendant's ingestion of a sufficient quantity of drugs to require hospitalization would be considered voluntary in the absence of evidence to the contrary. The defendant most assuredly has the right to be present during his trial, including the return of the verdict; however, this right may be waived. A defendant who voluntarily absents himself after a trial has commenced shall be considered to have waived his right to be present. *State v. Kirk,* 699 S.W.2d 814, 819 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1985). The defendant in this case was present until the jury retired for deliberation. He consumed a drug which rendered him nonresponsive and semi-conscious to emergency treatment and required hospitalization. In the defendant's absence, he was nevertheless represented by competent counsel. We find that he voluntarily waived his right to be present. *State v. Clayton Arnold Veach,* No. 87-272-III, 1988 WL 68063 *2 (Tenn. Crim. App., Nashville, June 14, 1988), *per. app. denied* (Tenn. 1988). There is no merit to this issue.

## Part F

## Multiple Offender

The defendant contends the trial court erred in finding a Texas conviction proper to establish the defendant as a Range II offender. The state argues the record supports that the defendant is a Range II multiple offender.

Since the defendant claims he is not a Range II multiple offender, we must determine from the record at the sentencing hearing if the trial court was correct in finding the defendant a Range II offender. The defendant was convicted of aggravated sexual battery, a Class B felony. To be classified as a Range II multiple offender, a defendant must have "a minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes." Tenn. Code Ann. § 40-35-106(a)(1). With regard to the application of out- of-state convictions to determine the applicable range, the Code states:

> Prior convictions include convictions under the laws of any other state, government, or country which, if committed in this state, would have constituted an offense cognizable by the laws of this state. In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used by the Tennessee court

22

to determine what classification the offense is given.

Tenn. Code Ann. § 40-35-106(b)(5).

At the sentencing hearing, two certified copies of felony convictions, concerning the defendant, were introduced into the record. First, a certified copy of the defendant's conviction for sexual assault entered by the District Court of Grimes County, Texas, on June 17, 1991, was introduced. For that conviction, the defendant received a sentence of ten years, which was suspended, and he was placed on immediate probation for ten years. Second, a certified copy of a conviction for attempted aggravated assault, a Class D felony (reduced from the charge of rape of a child) entered on October 5, 1992, by the Maury County, Tennessee Criminal Court was introduced. *See* Tenn. Code Ann. §§ 40-35-110; 39-12-107(a). The defendant was sentenced to three years in the Tennessee Department of Correction. In addition, a third certified copy of the defendant's conviction for possession of a controlled substance on April 27, 1981, in the Municipal Court of Cheyenne, Wyoming, was introduced. The defendant received a thirty-day suspended sentence and a $200 fine for that conviction. A fourth certified copy of a conviction for unauthorized use of a motor vehicle entered on May 15, 1979, by the 263rd District Court of Harris County, Texas, was introduced. The defendant was sentenced to three years in the Texas Department of Correction.

Ms. Charlotte Henson, Department of Human Services for Maury County, testified she talked to Wayne Rucker, District Clerk for the 278th Judicial District Court of Texas, about the defendant's conviction in 1991. Ms. Henson was advised the defendant had been indicted for the penile penetration of the female sexual organ of a child less than 14 years of age. The child was age 9 at the time of the accusation. In his testimony, the defendant denied he was guilty of any sexual offenses in Texas or Tennessee. He could not explain why all these accusations occurred.

The version of Texas Penal Code Annotated § 22.011 (West 1990), under which the defendant was convicted, defines sexual assault as:

> (a)  A person commits an offense if the person:
>
> * * * *
>
> (2)  intentionally or knowingly:

23

(A) causes the penetration of the anus or female sexual organ of a child by any means.

\* \* \* \*

(f) An offense under this section is a felony of the second degree.

From our analysis, it is clear that the offense as set out in the Texas statutes is comparable to rape of a child in Tennessee, a Class A felony. Tenn. Code Ann. § 39-13-522. The defendant has two prior felony convictions that are within a class higher or within the next two classes below his current Class B conviction for aggravated sexual assault, and, therefore, qualifies as a Range II offender pursuant to Tenn. Code Ann. § 40-35-106(a)(1). *State v. Brooks*, 968 S.W.2d 312 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1998); *State v. Jerry G. Norrid*, No. 01C01-9507-CC-00225, 1996 WL 374107 (Tenn. Crim. App., Nashville, July 5, 1996). In addition, the defendant's prior Class A conviction is a separate Range II qualifier when combined with the defendant's current Class B conviction. Tenn. Code Ann. § 40-35-106(a)(2). Subsection (a)(2) of Tenn. Code Ann. § 40-35-106 classifies an offender as Range II when he has "[o]ne (1) Class A prior felony conviction if the defendant's conviction offense is a Class A or B felony." Because the defendant is a Range II offender under the provisions of either § 40-35-106(a)(1) or (a)(2), the trial court was correct in classifying him as such. This issue has no merit.

**Part G**

**Sentencing**

The defendant contends the trial court erred in finding three enhancement factors to increase the term of confinement and in sentencing him to two sixteen-year consecutive sentences. These are: factor (3), the offense involved more than one victim; factor (4), a victim of the offense was particularly vulnerable because of age; and factor (7), the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. The defendant does not challenge the application of factor (8), the defendant has a previously history of unwillingness to comply with conditions of a sentence involving release in the community. The state contends the trial court properly sentenced the defendant to an appropriate period of confinement.

24

When an accused challenges the length, range, or manner of the service of a sentence, this Court has a duty to conduct a **de novo** review of the sentence with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). If the court misapplies or fails to apply appropriate factors, the presumption of correctness no longer stands. *State v. Shelton,* 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In conducting a **de novo** review of a sentence, this court must consider: (a) the evidence, if any, received at trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; *see State v. Smith,* 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

From our review of the record, the trial court misapplied factors (3), the offense involved more than one victim, and (7), the offenses were committed to gratify the defendant's desire for pleasure and excitement, to this case. Thus, we review the trial court's judgment without the benefit of the presumption of correctness. The trial court found six enhancement factors: Tenn. Code Ann. § 40-35-114(1), the defendant has a prior criminal history in addition to those necessary to establish the necessary range; (3) the offense involved more than one victim; (4) the age of the victims made them particularly vulnerable; (7) the offenses were committed to gratify the defendant's desire for pleasure and excitement; (8) the defendant has a previous history of unwillingness to comply with

25

conditions of a sentence involving release in the community; and (13) the defendant was on probation when these felonies were committed. Further, the trial court found that confinement was necessary, under Tenn. Code Ann. § 40-35-103(A) and (B), to protect society and to avoid depreciating the seriousness of the offense. The trial court found no mitigating factors applicable.

A conviction for aggravated sexual battery is a Class B felony. The presumptive sentence for a Class B felony shall be the minimum sentence in the range, if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). Since the defendant was found to be a Range II offender, the applicable range of punishment is not less than twelve years nor more than twenty years. Tenn. Code Ann. § 40-35-112(b)(2).

The defendant argues that the trial court erroneously found that factors (3), (4), and (7) were applicable. We agree with the defendant and the state that factor (3), the offense involved more than one victim, does not apply. In addition, we agree with the defendant that factor (7), the offenses were committed to gratify the defendant's desire for pleasure and excitement, is inapplicable to this case. Since this factor is also an essential element of sexual battery, the court is not permitted to use it as an enhancement factor. *See State v. Kissinger,* 922 S.W.2d 482, 489 (Tenn. 1996).

In *State v. Adams,* 864 S.W.2d 31, 35 (Tenn. 1993), our Supreme Court provided a framework for the application of factor (4) relating to the victim's vulnerability:

> [T]he vulnerability enhancement relates more to the natural physical and mental limitations of the victim than merely to the victim's age. . . . **The factor can be used . . . if the circumstances show that the victim, because of his age or physical or mental condition, was in fact "particularly vulnerable," i.e., incapable of resisting, summoning help, or testifying against the perpetrator.**

*Id.* (emphasis added).

We agree with the defendant that the trial court was in error for finding that the victim, KB, was particularly vulnerable, factor (4). Applying the test in *State v. Adams,* we find that the victim, KB, was not particularly vulnerable. KB was 10 years old and was capable of resisting the defendant and seeking help. In fact, she did resist and sought help by telling her mother of the defendant's actions. However, as to the victim, EC, age 5, we believe the trial court was correct in finding her particularly vulnerable. Certainly, this five-

26

year-old child was incapable of resisting or summoning help and, as it developed, she was unable to testify. The child's incident only came to light when she informed her father why she was hurting during her bath. Clearly, the trial court was correct in applying factor (4) to the facts in EC's case.

The state would urge this Court to find that the defendant abused a position of private trust under Tenn. Code Ann. § 40-35-115(15). This factor allows a sentence to be enhanced when the defendant abuses a position of public or private trust. To determine if this enhancement factor is applicable, we must look at the formal or informal nature of the parties' relationship to see if it promoted confidence, reliability, or faith. *State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996). The defendant, over four to five months, developed a continuing friendship with several neighborhood children, including the victims. These children came on a regular basis to the defendant's home, where he cultivated their trust even to the extent of showing pornographic pictures to the children. The defendant provided a van for the children to play in and encouraged them to spend time in and around his home. On other occasions, the defendant would take the children to McDonald's for food, accompanied by one of the children's mother. We believe under these facts, the defendant abused a position of private trust involving KB and especially EC. Factor (15) is appropriately applicable to enhance the defendant's sentence.

The record fully supports the trial court in applying enhancement factors (1) and (13), as well as factor (4) to the offense involving EC. Tenn. Code Ann. § 40-35-114. The defendant certainly has a prior history of convictions, which surround the sexual abuse of small children, and he was on probation for a sexual assault in Texas at the time of the offense. Factor (15), abuse of a private trust, is also applicable to this situation. The overwhelming proof of the other enhancement factors justifies the trial court in increasing the minimum sentence from twelve to sixteen years.

Tennessee Code Annotated § 40-35-115, Multiple Convictions, provides a trial court may order sentences to run consecutively or concurrently:

> (a) If a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section.
>
> (b) The court may order sentences to run consecutively

27

if the court finds by a preponderance of the evidence that:

\* \* \* \*

(2) The defendant is an offender whose record of criminal activity is extensive;

\* \* \* \*

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation.

In *State v. Wilkerson*, 905 S.W.2d 933, 937-38 (Tenn. 1995), the Supreme Court imposed two additional requirements for consecutive sentencing: the court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. In view of the defendant's past criminal history involving minor children, we find the aggregate sentences are reasonably related to the severity of the defendant's present offenses. The public is entitled to protection from such further conduct. Tenn. Code Ann. § 40-35-115. There is no merit to this issue.

28

The trial court's judgment is affirmed.


_____
L. T. LAFFERTY, SENIOR JUDGE


CONCUR:


_____
DAVID G. HAYES, JUDGE


_____
JOE G. RILEY, JUDGE