# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on briefs May 15, 2012

## STATE OF TENNESSEE v. REGINALD DEWAYNE TERRY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2005-C-2496      Mark J. Fishburn, Judge**

---

**No. M2011-01891-CCA-R3-CD - Filed November 19, 2012**

---

Defendant, Reginald Dewayne Terry, was indicted by the Davidson County Grand Jury in a two-count indictment for aggravated burglary with intent to commit theft and with intent to commit assault. Defendant was convicted by a jury of the count of aggravated burglary with intent to commit theft and sentenced by the trial court to 15 years confinement. Defendant appeals his conviction and asserts that: 1) the trial court erred by denying his motion to suppress the victim's identification of Defendant in a photographic lineup; 2) the trial court erred by allowing Detective Gerald McShepard to testify that the photo of Defendant used in the photo lineup was a booking photo because such testimony was more prejudicial than probative; 3) the trial court erred by refusing to allow Defendant to cross-examine the victim about her failure to appear at a prior court date; 4) the trial court erred by allowing Detective McShepard to give a lay opinion regarding fingerprint evidence; and 5) the evidence is insufficient to sustain his conviction for aggravated burglary. After a careful review of the record, we conclude that the trial court erred by ruling that the victim's refusal to appear at the originally scheduled trial date was not relevant to her credibility as a witness. Therefore, we reverse the judgment of the trial court and remand this case for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Reversed and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. JOSEPH M. TIPTON, PJ., concurs in results.

James O. Martin, III, Nashville, Tennessee, (on appeal), and Joshua Brand, Nashville, Tennessee, (at trial), for the appellant, Reginald Dewayne Terry.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Robert McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Motion to suppress photo lineup*

At a hearing on Defendant's motion to suppress the photo lineup, Detective Gerald McShepard, of the Metropolitan Nashville Police Department, testified that in May, 2005, he was assigned to investigate an aggravated burglary in which the victim was Kimberly Scales. Detective McShepard testified Defendant was developed as a suspect based on information provided by the victim about Defendant's physical appearance. He obtained a photo of Defendant from a database of booking photos and compiled a photo lineup with random computer generated booking photos of other individuals with similar physical characteristics. Detective McShepard testified that the background in Defendant's photo was white because it was taken after renovations to the booking area of the Davidson County Sheriff's Office. The background colors in the other photos were different than the background color in Defendant's photo, but there were also some differences among the other photos. Detective McShepard told Ms. Scales that there was no significance in the order in which the photographs appeared and instructed her to identify a person only if she was "a hundred percent certain that that is the person [who] committed the offense." After viewing the photo lineup, Ms. Scales identified Defendant as the person who committed the offense.

*Trial*

The victim, Kimberly Scales, testified that in May, 2005, she lived in an apartment on Avondale Circle with her six-year-old son and her roommate. In the early morning hours of May 6, 2005, she was lying on the couch in the living room. Her son was asleep in the bedroom. Ms. Scales had fallen asleep on the couch before she heard her son call out for her. She jumped up and began to run to him. She testified that as she passed by the kitchen, she noticed that the back door was open. There was a black male standing beside the stove, reaching to turn off the light above the stove. She asked who he was and what he was doing in her house, and she picked up a chair to defend herself. She asked again who he was, and he ran out of the house. She testified that he did not make any movements towards her.

Ms. Scales testified that the intruder was wearing a dark-colored hooded sweatshirt and blue jeans. The outside floodlights were on as well as the range hood light, and she saw the intruder's face when the hood on his sweatshirt slid back away from his face after she startled him. When he left, Ms. Scales called the police. She described the intruder to the

police. She testified that Detective McShepard subsequently showed her a photo lineup, and she identified Defendant as the person who was in her house. She also identified Defendant in court. Ms. Scales testified that nothing was missing from her house.

Detective McShepard testified that he responded to a home invasion call at Ms. Scales' residence. When he arrived, Ms. Scales provided a physical description of the person who entered her home. Ms. Scales stated that he was a black male with a bald head, approximately 200 to 220 pounds and six feet and one inch tall. He was approximately 30 years old, and he was wearing a dark hooded sweatshirt and blue jeans. Detective McShepard testified that Officer Johnny Lawrence attempted to collect latent fingerprints from the scene, but the prints taken were unidentifiable. Detective McShepard testified that he did not observe any indications of a forced entry at Ms. Scales' home.

Detective McShepard testified that Defendant became a suspect in this case, and Detective McShepard compiled a photo lineup to show Ms. Scales. Detective McShepard acknowledged that the background in Defendant's photograph was different and testified that he had "absolutely no control over the backgrounds." Detective McShepard read a form "called advice to witness viewing a photographic display" to Ms. Scales before she viewed the photo lineup. He showed the photo lineup to Ms. Scales on May 9, 2005, and she identified Defendant in the photo lineup. Detective McShepard testified that "[t]here was no hesitation." He testified that he "absolutely did not say anything to [Ms. Scales]" about having already identified a suspect in the investigation.

Defendant did not testify or present any other proof at trial.

*Analysis*

**Motion to suppress**

Defendant asserts that the trial court erred in denying his motion to suppress evidence of the victim's identification of Defendant. Defendant first contends that the victim's identification of Defendant at trial was not independent of her previous photo identification. Defendant argues, "she, at best, only identified [the defendant] as the person she had previously selected from the photo lineup[.]" Defendant also asserts that the photo lineup was "unduly suggestive and prejudicial" because the background in the picture of Defendant was white and the backgrounds in the other photographs were not, and "the police had made clear to the victim prior to her viewing of the lineup they had a particular suspect in mind thus sending the message that that person would be in the lineup."

Regarding Defendant's assertion that Ms. Scales' in-court identification of Defendant was not sufficiently independent of her identification in the photo lineup, the following testimony is pertinent:

Q. Okay. Do you see the person in court today who broke into your house on May 5th –

A. The man that I identified. Yes, I do.

Q. Would you please point him out and describe what he's wearing?

A. He's to my left, here.

Q. What kind of clothes is he wearing?

A. He's got the white shirt on.

Q. You don't want to look at him, do you?

A. No.

Q. Okay. Ms. Scales, are you sure that this is the man here today who broke into your house on that occasion?

A. Yes, sir.

Defendant concedes on appeal that Defendant is the person about whom Ms. Scales was testifying. Ms. Scales answered that she saw the man she identified in the photo lineup in court, and she testified that the man she identified in the photo lineup was the man who was inside her house. She also answered affirmatively that the man she identified in court was the man who broke into her house. Ms. Scales' testimony sufficiently identified Defendant as the person who was inside her house.

Defendant also asserts that his picture was "illuminated by the difference in background from the other photos in the lineup . . . ." He argues that the "grossly dissimilar" background in Defendant's photo, taken together with Ms. Scales knowledge that investigators had identified a suspect, made the photo lineup overly suggestive. Defendant contends the trial court erred by denying his motion to suppress the results of the photo lineup.

An appellate court may consider the evidence presented at the suppression hearing as well as at trial in determining whether the trial court properly denied a pretrial motion to suppress. *State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998). In conducting our review, it is a settled principle that "[f]indings of fact made by the trial judge after an evidentiary hearing of a motion to suppress are afforded the weight of a jury verdict, and this court will not set aside the trial court's judgment unless the evidence contained in the record preponderates against his findings." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996) (quoting *State v. Adams*, 859 S.W.2d 359, 362 (Tenn. Crim. App. 1992)). In addition, the Tennessee Supreme Court has stated:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

*Id*. at 23.

Our analysis of this issue is based upon the United States Supreme Court's holding in *Simmons v. U.S.*, 390 U.S. 377 (1968), and *Neil v. Biggers*, 409 U.S. 188 (1972). In *Simmons*, the Court held that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384. In *Neil v. Biggers*, the Court established a two-part analysis which the trial court must apply to determine the validity of a pretrial identification. 409 U .S. at 198-200. First, the trial court must determine whether the identification procedure was unnecessarily suggestive. *Id*. at 198. Next, if the trial court determines that the identification was unnecessarily suggestive, it must then consider whether, under the totality of the circumstances, the identification procedure was nonetheless reliable. *Id*. at 199. In Tennessee, it is unnecessary to apply the totality of the circumstances test described in *Biggers* if the trial court determines that the identification procedure was not unnecessarily suggestive. *See State v. Butler*, 795 S.W.2d 680, 686 (Tenn. Crim. App. 1990) (declining to apply the totality of the circumstances test when a lineup was not found to be unnecessarily suggestive).

When a defendant argues that a lineup is suggestive based on differences between the subjects of the lineup, this Court has required that the subjects be "grossly dissimilar" before it will find that the lineup is impermissibly suggestive. *See State v. Edwards*, 868 S.W.2d 682, 694 (Tenn. Crim. App. 1993) (*citing U.S. v. Wade*, 388 U.S. 218 (1967); *Young v. State*, 566 S.W.2d 895 (Tenn. Crim. App. 1978); *Shye v. State*, 506 S.W.2d 169 (Tenn. Crim. App. 1973)).

The trial court denied Defendant's motion to suppress Ms. Scales' identification testimony. At the conclusion of the suppression hearing, the trial court made the following findings of fact:

> I do not find based solely on the background distinctions that the photographic array is unduly suggestive to the extent that it may have resulted in a misidentification, mistaken identification of constitutional proportions.
>
> Yes, there is no question that there is a difference in the backgrounds. There are really two or three different backgrounds on this photo array. . . . But I do not find that that, in and of itself, based on what the Court has heard at this time violates any due process principles or is impermissibly suggestive.

Based on our review of the record, we agree with the trial court and conclude that there was nothing unnecessarily suggestive about the photo lineup. The lineup contains photographs of six African American males, all of whom appear to be of similar age, similar in size, and all are bald with some facial hair. Each photograph is uniform in size. The background in Defendant's photo is white. The backgrounds in the other five photos are also light in color, either gray or white with darker shadows, but none are as white as the background in Defendant's photo. Two pairs of the photos appear to have the same background, and another photo has a different background. All of the photos have similar backgrounds, however, and the differences are not pronounced. There is nothing about the background in any of the photos to draw the viewer's attention away from or toward any particular man in the photos. Defendant's photo is not "grossly dissimilar" to the others in the lineup.

Defendant cites this Court's opinion in *State v. Albert W. Bentley*, No. M2010-01882-CCA-R3-CD, 2011 WL 6916762 (Tenn. Crim. App., at Nashville, Dec. 29, 2011), *no Rule 11 app. filed*, in which this Court affirmed the trial court's denial of the defendant's motion to suppress, finding that the photo lineup was not unnecessarily suggestive. Defendant distinguishes this case on the basis that the backgrounds in the photo lineup in *Bentley*

"appear[ed] to be similar, *if not identical*." (Emphasis added). We are not persuaded by this distinction. Also in *Bentley*, this Court held that the detective's statement to the victim in that case that the police had identified fingerprints and his question about whether the victim knew the defendant were not unnecessarily suggestive. *Id*. at *6 (citing *State v. Christopher M. Black*, No. M2007–00970–CCA–R3–CD, 2010 WL 681405, at *14 (Tenn. Crim. App., at Nashville, Feb. 26, 2010), *perm. app. denied*, (Tenn., Aug. 26, 2010) (holding detective's statements to witness before a photographic lineup that police had a "'possible suspect'" or a "'DNA match'" were not unnecessarily suggestive). Detective McShepard testified at the suppression hearing that Ms. Scales was aware that police had a suspect in this case; however, at trial, Ms. Scales denied assuming that police had a suspect when she viewed the photo lineup, and Detective McShepard denied that he made any statements to Ms. Scales about investigators having a suspect. Even if Ms. Scales knew when she viewed the photo lineup that the police had a suspect, that would not necessarily invalidate the photo lineup, and Defendant offers no authority in support of such contention. Defendant is not entitled to relief on this issue.

**Evidence that Defendant's photo in the photo lineup was a booking photo**

Defendant asserts that the trial court erred by allowing Detective McShepard to testify that the photo of Defendant used in the photo lineup was a booking photo. Defendant argues that this testimony was not relevant and was more prejudicial than probative.

In order to be admissible, evidence must be relevant and probative to an issue at trial. *State v. McCary*, 922 S.W.2d 511, 515 (Tenn. 1996); *see also* Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, even relevant evidence may be excluded at trial if the probative value of that evidence "is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. The determination of relevancy is left to the discretion of the trial court, and this Court will not overturn a trial court's ruling in this regard in the absence of an abuse of discretion. *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

At the pretrial hearing on Defendant's motion to suppress, Detective McShepard testified that Defendant "had been a suspect in several other burglaries in the area, including one particular one. So he was developed as a suspect based on his height, weight and age information that was provided by the victim." After ruling that the photo lineup was admissible, the trial court expressed concern that the State not present evidence that Defendant had been suspected in other burglaries and that his photo was a booking photo.

In accordance with the trial court's instruction to avoid such testimony, Detective McShepard testified at trial about the process of constructing a photographic lineup but did not state how Defendant was developed as a suspect in this case or how he obtained Defendant's photo for the lineup. The State asked Detective McShepard, "[W]as [Defendant] developed as a suspect in this case?" to which Detective McShepard answered, "Yes, sir, he was." On cross-examination, defense counsel questioned Detective McShepard about the photo lineup and asked, "[S]o you're obviously not going to have any control over the background in that picture, in particular, right?" On redirect examination, the State asked Detective McShepard, "[W]hy was the background white in the picture that [Defendant] was taken." He began to explain that "[t]he Sheriff's Department had completed a renovation of the booking area," and defense counsel objected. The trial court then allowed Detective McShepard to testify that the Sheriff's Department had completed a renovation of the booking area and some colors on the wall were changed by painting.

Regarding the admissibility of "mug shots," this Court has previously held:

> The defendant objected to the introduction of pictures taken of him on the day of the offense because the pictures were obviously police photographs, which are commonly referred to as "mug shots." The admissibility of photographs is within the discretion of the trial judge, and unless this Court can say the prejudicial effect of a photograph far outweighs the probative value thereof, the trial judge will not be found to have abused his discretion. *State v. Banks*, 564 S.W.2d 947 (Tenn. 1978).
>
> The danger in the introduction at trial of mug shots of an accused is that an inference of previous criminal activity may arise. However, mug shots alone are not sufficient to cause such inference. *U.S. v. Calarco*, 424 F.2d 657 (2nd Cir. 1970). The mug shots in this case bore the date of the offense. Obviously, the pictures would not raise any inference of prior criminal activity.

*State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983).

Defendant's position at trial was that the background in the photo of Defendant was so distinct that it somehow impermissibly highlighted Defendant in the photo lineup. The State asserts on appeal that Detective McShepard's testimony was relevant to "dispel[ ] the idea that investigators were conspiring to secure an identification of the defendant by improper means." We disagree. While the identification of Defendant by the victim in the photo lineup is a fact of consequence to the trial, Detective McShepard's testimony about the photo background was not relevant to refute Defendant's suggestion that the photo lineup

was improperly suggestive. It was the color of the background in each photo, not the reason why the background color was as it was, that was relevant. However, the prejudicial effect of testimony that Defendant's photo was taken in the booking area of the sheriff's office is minimal. There was no evidence presented that Defendant had been suspected of other burglaries in the area or that he had in fact been previously convicted of other crimes. The error was harmless. Defendant is not entitled to relief on this issue.

**Relevance of victim's nonappearance at first trial date**

Defendant asserts that the trial court should have allowed him to cross-examine the victim about her failure to appear at the originally scheduled trial date because it reflected on the victim's credibility. The State responds that such evidence is not relevant and that the trial court's limitation on Defendant's cross-examination of the victim was proper.

The trial in this case was originally scheduled to begin on August 30, 2010. On that date, the trial court conducted a hearing on Defendant's motion to suppress. Following the hearing and *voir dire*, the court announced that the victim, Ms. Scales, was not present. The State explained that Ms. Scales had indicated that she did not have notice "that this was going to happen today, and that she wanted to prosecute but was not able to come today, or something like that." The trial court then stated its efforts to locate Ms. Scales as follows:

> And I also, in the presence of the attorneys, attempted to make contact with her as well, and got voicemails. I called her both on my office phone, as well as my cell phone in case she wasn't answering because of the prefix of my office number.
>
> Based on that I sent out a material witness warrant bond set on it [sic] and sent two of my staff, along with the State's investigator to her address, where she is verified to still be living and they just called me back. Her daughter was still there, her daughter did make contact with her on the phone. Her daughter conveyed to her mother, what was conveyed to her by my staff, which was, if she came back to the house right now and joined them in coming to court and testifying, that when her testimony was over with she would be allowed to leave and everything would be fine. However, if she refused to come that she, the material warrant had issued and that when she was found she would be taken into custody and if she couldn't post the bond it would be unclear how long she would be in jail. She said she didn't care, she wasn't going to be here today, and hung up.

And her daughter has not provided us any information on where Ms. Scales is at the present time, so they don't know where to go looking. So, that's it in a nutshell.

The trial court denied Defendant's oral motions to dismiss for failure to prosecute and for speedy trial and set a new trial date for October 4, 2010. The State subsequently filed a motion to prohibit Defendant from making references to the victim's failure to appear at the prior court date. In the motion, the State asserted without any citation to authority "that Ms. Scales prior failure to come to court is completely irrelevant and not probative of any issue regarding her credibility or truth-telling ability." At a hearing on the State's motion, the following exchange occurred:

> [Defense counsel]: Respectfully, Your Honor, I think it absolutely has everything to do with credibility and it goes beyond just the fact that she failed to appear in court, it's the fact that she's been telling different stories to your court officers. At one point she said she was in Mt. Juliet, and at one point she said she was in Memphis. One point she said she forgot she had to come to trial today. So the issue is more that she is kind of blowing all the smoke all over the place and I feel I should at least be able to ask her –
>
> [Prosecutor]: Your Honor, she never said she was going to Memphis. Her sister, I think said that, and I don't know what the reason for that is, and she never did said [sic] she didn't know she didn't have to come to court or she forgot, she just basically felt like she didn't have enough notice to come to court and it was inconvenient for her to come to court on that da[y]. We obviously corrected that.
>
> But I don't think there is a different story that she's told. She said she was in Mt. Juliet, she's maintained she was in Mt. Juliet and I think that's, I mean that's the truth. As far as I can tell she certainly wasn't at her house.
>
> THE COURT: I'm going to grant the motion. I don't think it has any relevance to the issues in this case, and quite frankly the, I'm not sure until she came in here with the attorney, Mr. Mayo, we never really did address it at that time, that there was any direct communication with her. It was her daughter not her sister –
>
> [Defense counsel]: Yes, sir.

-10-

THE COURT: – who happened to be at the house.

[Prosecutor]: I know her sister at some point called somebody.

THE COURT: I think that's true. I think her sister called and talked to one of the court officers, and then there was some communications with her daughter at her residence and her daughter said she was not there. And she communicated some things, but none of them came from the witness [her]self. I don't think she's ever given an explanation except through her attorney.

[Defense counsel]: Respectfully, Judge, the fact of the matter is that she actually knew she had court that day, and that she was coming in here and basically making up excuses for why she wasn't here. And at the very least I'd like to be able to ask her about a conversation I had with her where she told me that she was coming to court on Monday, and she knew she had court and all this stuff. Then she comes in and starts telling the court that she didn't have notice and she didn't realize, she didn't remember, whatever her excuse has been. And it's obviously more than just, you know, oh, it was inconvenient. And so, I think that's at least probative to her credibility as a witness and whether the jury can believe that she feels comfortable, you know, basically saying whatever she wants to the Court.

THE COURT: Well, I'm going to grant the motion.

As we stated earlier in this opinion, relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. We review a trial court's determination as to relevance of evidence for an abuse of discretion. *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

Although Defendant did not request to make an offer of proof by examining Ms. Scales about her absence at the originally scheduled trial date, the above quoted exchange, including the trial court's recitation of the events concerning Ms. Scales' absence and defense counsel's statements to the court about his pretrial conversation with Ms. Scales, are sufficient to allow our review of the issue.

Defendant asserts that because the only evidence of Defendant's identity as the perpetrator is Ms. Scales' identification of him, her credibility was at issue in the trial. Defendant argues, "it would have been relevant to cross-examine Scales [about] whether it

was her uncertainty over her identification of the Defendant that led to her refusal to come to court and testify the first time the case was set for trial." We agree with Defendant, and thus disagree with the trial court's conclusion that evidence of Ms. Scales' refusal to appear at the originally scheduled trial date was not relevant to her credibility. We believe that at the very least, Ms. Scales' flagrant refusal to obey a lawful subpoena to appear at a court proceeding does in fact directly reflect on her credibility as a witness. If nothing else, it could lead to an inference that a person who refuses to obey a subpoena without just reason would also refuse to accept the solemnity of an oath to tell the truth. For this reason, we conclude that the trial court abused its discretion by not allowing Defendant to cross-examine Ms. Scales about her failure to appear. In light of the crucial nature of Ms. Scales' testimony to the State's case, we conclude that the error is not harmless. Accordingly, the conviction must be set aside and this case remanded for a new trial.

**Lay testimony regarding fingerprint evidence**

Defendant contends that the trial court erred by allowing Detective McShepard to testify as to why no fingerprints were able to be developed in this case. Detective McShepard testified on direct examination that Officer Johnny Lawrence attempted to lift latent prints from the range hood, which Ms. Scales testified she saw Defendant reaching for to turn off the light. Detective McShepard testified, and a report introduced into evidence shows, that the prints were unidentifiable. About the results of the report, Detective McShepard testified, "It means that the, they were unidentifiable. There was a lot of grease inside of that particular kitchen area, so the prints were of no value." Defendant did not object to the report or Detective McShepard's testimony.

On cross-examination, defense counsel asked Detective McShepard whether he had viewed the fingerprints again since 2005 in light of advancements in fingerprint technology, and Detective McShepard testified that he had not. On redirect examination, Detective McShepard testified:

> Q:    So, basically the technology that [defense counsel] is asking about is that [the fingerprint examiner] would look at the same fingerprint [five] years later and compare it against the same fingerprints five years later and I guess, he's insinuating she would come up with a different result this time; is that fair?
>
> A.    I can say with an absolute certainty that she wouldn't come up with anything other than what was unidentifiable, of no value, from 2005.

-12-

The State argues that Defendant has waived review of this issue by failing to make a contemporaneous objection at trial. Appellate relief is generally not available when a party is "responsible for an error" or has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." Tenn. R. App. P. 36(a); *see State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988). Nevertheless, even if Defendant had not waived this issue by failing to object, we conclude that any error was harmless. The fingerprint evidence did not inculpate Defendant, and Defendant was not prejudiced by Detective McShepard's testimony. Defendant is not entitled to relief on this issue.

**Sufficiency of the evidence**

Defendant next asserts that the evidence at trial was insufficient to support his conviction for aggravated burglary. Specifically, Defendant contends that the State failed to prove any intent to commit a theft.

Our standard of review when a defendant challenges the sufficiency of the evidence on appeal is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

This Court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn.1973).

This Court must afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). "Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005).

In order to sustain a conviction for aggravated burglary, the evidence must show that Defendant entered the victim's residence, without her consent, and with the intent to commit a felony, theft or assault. Tenn. Code Ann. § 39-14-402, -403.

Ms. Scales testified that when she saw Defendant in her home, she immediately confronted him, asking him why he was in her home and picking up a chair "for protection." The jury could reasonably infer that Ms. Scales had not given Defendant her consent to be in her home. Defendant argues that "there was no evidence of any intent to commit a theft." This Court has held that specific intent may be established by circumstantial evidence. *State v. Burkley*, 804 S.W.2d 458, 460 (Tenn. Crim. App. 1990). In *Burkley*, this Court held that "[w]hen one enters, without authorization, an occupied dwelling which contains valuable property, a jury is entitled to infer that the entry was made with the intent to commit a felony." 804 S.W.2d at 460 (citing *Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973)).

Defendant asserts that because there was no evidence of forced entry and nothing appeared to have been taken from the victim's residence, that the evidence does not support a finding of intent to commit a theft. However, we conclude that the jury could reasonably infer that Defendant intended to commit a felony once inside the victim's home. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the reasons set forth herein, the judgment of the trial court is reversed and remanded for a new trial.

_____
THOMAS T. WOODALL, JUDGE

-14-